## PIERCE *vs.* ALSOP.

Where, subsequent to the death of a person who died intestate, without leaving sufficient personal estate to pay his debts, his heir at law conveyed to a creditor of the decedent a portion of the real estate which descended to him as heir at law, in part payment of the debt owing to the grantee by the decedent; *Held* that such conveyance was not entitled, even in equity, to a preference over the legal lien of a judgment previously obtained by another person, against the heir at law; it not appearing that there was no other real estate to pay the debts of the testator, after applying the personal property for that purpose.

To entitle a creditor of a deceased debtor to a legal preference over a judgment creditor of the heir at law of the debtor, he must himself proceed to a judgment, or decree, against the heir at law, for the debt due from the latter, in respect to the lands descended from the deceased debtor. Or he must apply to the surrogate,

Pierce *v.* Alsop.

for a sale of the land, to satisfy the debts of the decedent which the personal estate is insufficient to pay.

A person has no right to apply to the court to set aside an execution for irregularity, so far as it affects his rights, in a suit to which he is not a party.

The issuing of an execution, after the lapse of two years, without reviving the judgment by scire facias, where all the parties to the judgment are alive, is an irregularity merely; and does not render a sale under it void.

THIS was an appeal from a decree of the late vice chancellor of the third circuit, allowing a demurrer, and dismissing the bill of the complainant, with costs. Gilbert Devoe died in September, 1834, intestate, leaving his father C. Devoe his heir at law; to whom all the real estate of the decedent descended, subject to the payment of his debts. The decedent was indebted to C. & I. T. Storms more than $20,000, they being his principal creditors; and his personal property was wholly insufficient to pay his debts. In January, 1837, the defendant J. W. Alsop jr. recovered a judgment against C. Devoe and J. H. Devoe, for a debt due from them personally; which judgment was duly docketed, and became a lien upon the real estate which came to C. Devoe as the heir at law of his son G. Devoe, deceased.

In March, 1839, C. Devoe, the heir at law, for the purpose of satisfying a part of the debt due to C. & I. T. Storms, from his deceased son, conveyed to C. Storms a lot of land in the city of Albany, which had descended to him as such heir at law. The portion of the debt for which this lot was received in payment was $11,000; which was more than the actual value of the lot at the time of such conveyance. And at the time when the lot was thus received in part payment of the debt due from G. Devoe, deceased, to C. & J. T. Storms, they were ignorant of the existence of the previous judgment recovered against C. Devoe, the heir at law, and J. H. Devoe, in favor of Alsop. In February, 1842, C. Storms conveyed the Albany lot which had been deeded to him by the heir at law of his deceased debtor, to the complainant H. Pierce.

In November, 1842, Alsop caused an execution to be issued upon his judgment against C. Devoe and J. H. Devoe; under which execution the sheriff levied upon the Albany lot, and in the month of February, 1843, sold it at public vendue, to satisfy

the amount due upon the judgment. The complainant's attorney attended at the sheriff's sale, and gave notice to the bidders of his claim to the lot, and the circumstances before stated, which he insisted would be sufficient to defeat the title of the purchaser at the sheriff's sale. The defendant, however, by his agent, bid off the premises at the sheriff's sale, under his judgment and execution, and received the usual certificate therefor. But the sheriff had not executed a deed of the premises at the time of the filing of the bill in this cause; although the time of redemption had expired a few days before.

The complainant's bill, after stating these facts, and that the defendant refused to relinquish his claim under the sale, and that he intended to take a deed from the sheriff which would be a cloud upon the complainant's title, prayed for a decree declaring that the judgment of Alsop was not a lien upon the land, as against the complainant's title under the conveyances mentioned in the bill, and that the complainant's title was perfect; and that the defendant Alsop might be perpetually enjoined from taking a deed from the sheriff, or from commencing any ejectment suit for the recovery of the premises, or from disturbing the complainant in the peaceable enjoyment thereof. To this bill the defendant put in a general demurrer for want of equity; which demurrer was allowed by the vice chancellor, and the bill dismissed.

The following opinion was delivered by the vice chancellor.

A. J. PARKER, V. C. By the death of Gilbert Devoe, on the 6th of Sept. 1834, the premises in controversy became the property of Christopher Devoe, his father, and heir at law. His title to the land was absolute, subject only to be defeated by proceedings that might be instituted by the personal representatives or creditors of Gilbert Devoe, to charge upon it the payment of his debts, if his personal property should prove insufficient for that purpose. This could be done within three years after the granting of letters testamentary or of administration; on application to the surrogate by the personal representatives, to sell the real estate for the payment of the debts

Pierce v. Alsop.

of the deceased. (2 *R. S. 2d ed. p.* 39, § 1.) Or on the appli-
cation of a creditor, after the rendering of an account by an
executor or administrator. (*Sess. Laws of* 1838, *p.* 536, § 72.)
And it was provided by the revised statutes that if such appli-
cation should not be made within three years from the time
of granting letters testamentary, or of administration, a bill in
equity might be filed by the creditor against the heir, at the
expiration of that time, to collect the debt due by the ancestor
out of lands descended to the heir. (2 *R. S.* 46, § 53. *Id.*
370, § 42.) And by the act of 1837, (*Laws of* 1837, *p.* 537, §
73,) a suit at law may now be brought for the same purpose.
By these modes, and by these only, could the title of the heir
be defeated, and the land that had descended to him be charged
with the payment of the debts of the ancestor. Neither of
these proceedings has been instituted by the creditors, whom
the complainant claims to represent in this case; but the com-
plainant contends that by the deed of Christopher Devoe to
Charles Storms and Isaac T. Storms, the creditors of Gilbert
Devoe, deceased, in part satisfaction of their demand, on the
28th of March, 1839, and by the subsequent conveyance
from them to the complainant on the 21st of February, 1842,
he has acquired a title superior to that obtained by the defen-
dant under his prior judgment, recovered against Christopher
Devoe, for his own personal indebtedness on the 7th of January,
1837. It is clear that the defendant has the legal estate; and
if the complainant has any equitable right, that is to prevail
over the legal title. It rests upon the circumstance that the
consideration of the deed to his grantors was the indebtedness
of the deceased.

By 2 *R. S.* 371, § 48, it is provided that a bill filed against
the heir, to enforce the collection of the debt due from the an-
cestor, "the final decree rendered in such suit shall have pref-
erence, as a lien on the real estate described, to any judgment
or decree obtained against such heir personally, for any debt
or demand in his own right." And it is certain from the facts
alleged in the bill of complaint in this cause, and admitted by
the demurrer, that such a decree might have been obtained by

the Messrs. Storms, that would have overreached the previously docketed judgment of the defendant.   Under an execution sale by virtue of such a decree, a legal title would have been obtained, superior to the title obtained by the defendant.   But this bill is not filed for the purpose of obtaining any such decree; nor could it be, by the complainant, for he was not a creditor of Gilbert Devoe.   The bill of complaint in this case is filed for the mere purpose of protecting a legal title previously acquired; and in my opinion, the complainant cannot go back of his legal title, to avail himself of any equitable interests which were vested in, and might have been enforced by, others from whom he derives title.   I do not see that the complainant's title to the land is at all strengthened by the fact that his grantors applied in payment of their purchase a portion of their demands against Gilbert Devoe.   The creditor can only secure a preference by a careful compliance with the provisions of the statute.   And that requires a solemn adjudication of a court of justice, declaring by its judgment or decree the existence and extent of a debt against the ancestor, and its priority as a lien over the previously acquired judgment, obtained against the heir.   The heir cannot, by executing a deed to the creditor of his ancestor, cut off the lien of a judgment recovered by his own creditor.   It is the right of his creditor that the requirements of the statute shall be strictly pursued. If the Messrs. Storms had proceeded to obtain a judgment or decree, and to sell the premises under execution, the defendant might have exercised the right of redeeming or acquiring the title under the statute, as a junior judgment creditor.   (2 *R. S.* 294.)   If the taking of a deed from the heir is equivalent to a purchase under an execution sale, then it is a successful evasion of the statute, depriving the defendant of his chance of acquiring the title by redemption.   It is no answer to this position to say, that the Messrs. Storms were creditors of Gilbert Devoe for a much larger amount than the value of the land.   The rule must be applicable to all cases, and the right of the defendant to redeem, if he shall think proper to do so, cannot be cut off by any collusion between the heir and the creditor.   Suppose

the Messrs. Storms had obtained a judgment against the heir for a demand, due by the heir personally, before the judgment was recovered against him by the defendant, and after the docketing of defendant's judgment, the heir had released or conveyed to the Messrs. Storms; they would have lost their priority, and their legal title would have been subordinate to that obtained by the defendant under his judgment and execution. And on a bill filed to quiet that title, and to restrain the defendant from interfering with it, it could not avail them that the consideration for their deed was their prior unsatisfied judgment. The only course by which to avoid the effect of the subsequent judgment of the defendant, would be to sell under the prior judgment. In no other way could a title be obtained that would avail either at law or equity.

I do not find that the question I have examined has ever been expressly decided in the courts of this state, since the provisions of the revised statutes, prescribing the mode in which the creditors of the ancestor might obtain a preference, were enacted. But in *Morris* v. *Mowatt*, (2 *Paige*, 586, 592,) Chancellor Walworth says, "probably to give the purchaser a perfect legal title, sufficient in a court of law to protect him against a sale under a previous judgment against the heir or devisee, it may be necessary to issue an execution on the decree, and to have the property sold by the sheriff, in the usual manner. On this point, however, I do not mean to be understood as expressing any definitive opinion." See also *Butts* v. *Genung*, (5 *Paige*, 264,) where the chancellor has considered the effect of the provisions of the revised statutes regulating proceedings against next of kin, devisees and heirs.

The counsel for the complainant cites *Lewin on Trusts*, 209; 4 *Ves.* 368, to show that it is a rule in equity, "that what is compellable by suit is equally valid if done by a trustee without suit." This is undoubtedly a well settled principle; but it can have no application in this case. Neither the complainant, nor those from whom he derives title, stands in the relation of trustee, to any other person interested in the question. And it will never do to say, that in a struggle between creditors for the

Pierce v. Alsop.

preference, the complainant is to have all the advantages that his grantors might have secured by vigilance, but which, by their negligence, they have failed to obtain. Nor does it at all affect the decision of this case, that the Messrs. Storms had not actual notice of the existence of the defendant's judgment. It was enough for the defendant to docket his judgment, and it then became a lien of which all were bound to take notice.

It is also insisted in the bill of complaint, that the sale under the defendant's execution was void ; more than two years having elapsed, after the docketing of the judgment, before execution was issued, and the judgment not having been revived by scire facias. It is not alleged in the bill that such execution was issued without the consent of Christopher Devoe; but whether such consent was given or not, no one but the defendant in an execution can take advantage of such an irregularity. (*Jones* v. *Cook*, 1 *Cowen*, 309. *Ross* v. *Luther*, 4 *Id.* 158. *Ontario Bank* v. *Hallett*, 8 *Id.* 192. 5 *Wend.* 170. 6 *Id.* 367. 8 *Id.* 545. 12 *Id.* 96.)

I come, therefore, to the conclusion, in this case, that the equitable claim of the creditor of the ancestor can only be enforced against lands descended to the heir, by a strict conformity to the provisions of the statute, and that the creditor, on a bill filed to protect his legal title, cannot avail himself of any equitable interests existing in his grantors, and which they might have enforced. This opinion being upon the merits of the complainant's claim, is decisive of the cause, and it will be unnecessary to examine the other questions discussed by counsel at the hearing.

*S. H. Hammond*, for the appellant. The bill must be taken as true ; and the facts charged must be taken in their strongest sense against the defendant demurring. Hence, although the bill charges that Gilbert Devoe died possessed of little or no personal property, it will be understood as charging that Gilbert Devoe died possessed of no personal property. And hence also, it will be understood that the Storms were the only creditors of Gilbert Devoe, at the time of his death. This being

Pierce *v.* Alsop.

understood then, viz. that G. Devoe left no personal estate, and that the Storms were his only creditors, the questions are, (1.) Did Christopher Devoe take the property in question subject to the lien of the debt of Storms? and (2.) Could he dispose of the property for the payment of that lien or debt, without the interference of the courts, or the necessity of a lawsuit? In *Morris* v. *Mowatt*, (2 *Paige's Ch. Rep.* 590,) the chancellor says, "in the case under consideration the debts due from the testator to these complainants and others were equitable liens upon the estate devised to his sons, which liens are prior in point of time to the judgments against the sons for their own private debts," &c. The debt of the ancestor was an equitable specific lien upon this property in the hands of the heir; and the heir not having aliened the land, a judgment or decree for the debt of the ancestor could not have been enforced against the heir personally. It could only be satisfied by a sale of the property descending to him. (9 *Paige,* 28, *et seq.* 2 *R. S.* 369, 370, 371.) At the time when the Storms took the conveyance from Christopher Devoe, they had a right to proceed against him to compel a sale of the real estate to pay their debt. And on the facts of this case this court would have decreed a sale, and that decree would have had a preference as a lien over the defendant's judgment; and the purchaser at the sale would have acquired a better title than the purchaser under the defendant's judgment. He would have taken it discharged of any lien under the defendant's judgment. (2 *R. S.* 371, § 48. 2 *Paige,* 493. 9 *Id.* 28.) I assume, then, that the debt of Storms was an equitable specific lien on the premises in question older and better in reference to priority, than the lien of the defendant's judgment. It was also a lien twice as large as the value of the property. The debt was over $20,000, and the premises worth less than $11,000. Christopher Devoe, then, took this property subject to an incumbrance, (a specific one,) of twice its value; an incumbrance which could not be enforced against him personally. Subsequently a judgment was obtained against him for his personal debt. This became a lien. On what? The land itself; or on his interest after discharging

---

Pierce *v.* Alsop.

---

the debt of the ancestor? I suppose only on his interest beyond the prior specific lien. But that prior specific lien was twice the value of the property.

As to the second question—could Christopher Devoe dispose of the property for the payment of the debt of the ancestor; or in discharge of the equitable specific lien upon it? Or must he or the creditor encounter the expense of a lawsuit, where there is no possible dispute about the facts, and no questions about equities? That the Storms, when they took the deed, could have divested Christopher Devoe of the title by a decree of this court, no man can doubt; and that too free of the lien of the defendant's judgment. Now, it is a well settled principle that equity will sanction, if voluntarily done, whatever it would by its decree have required to be done. In other words; equity will regard as valid what is done without suit, if the doing of it is compellable by suit. (*Lewin on Trusts*, 209. 4 *Ves.* 368.) Applying this principle; the heir, regarding the land as less in value than the debt of the ancestor, chose to avoid a litigation by doing voluntarily what this court, by a decree, would have done for him, viz. to sell the land for the payment of the ancestor's debt. Equity will sanction the act.

But it is said the Storms must resort to a bill in chancery. For what? To compel a sale of the land? The person holding the legal title was willing to sell without suit. To obtain payment of their debt? The debtor was willing to pay to the extent of his liability, without a suit. Must they file their bill to prevent collusion and to save their property from sacrifice? It is admitted that they gave more for it than it was worth; and the court will not presume that it might bring more than its value. I take it for granted that the court will never require parties to go into an expensive litigation where there is no dispute about facts; where all parties admit the liability, and its extent; and where no one can be possibly injured by an amicable adjustment; especially where that adjustment is precisely what the court would have done by its decree, if the litigation had been had. Suppose this bill should be dismissed and we proceed, as the defendant contends we should have

done, against Christopher Devoe, to collect the debt due from Gilbert Devoe; what will the issue be? Why that this property in dispute will be sold to pay our debt as far as it will go. We shall become the purchaser; or, what is the same thing, receive the avails of the sale; thus arriving, by an expensive and tortuous course, precisely where we are if our deed be held valid. Now who would be benefited by this? Not the defendant; for he would be entitled only to the surplus, after paying all the debt of Gilbert to the Storms. That would be nothing, because the property is worth less than $11,000, and our debt is $20,000; and when we bought we gave more than it was worth. Not the other creditors of Gilbert Devoe, because there are none. The court will see that the only persons benefited by the litigation would be the lawyers who should conduct it.

*II. Harris*, for the respondent. Upon the death of Gilbert Devoe, the title to the real estate in question descended to, and vested in, Christopher Devoe his father and heir at law, subject to be defeated by a sale made under an order of the surrogate, upon the application of the executor or administrator, or of a creditor of the deceased. (2 *R. S.* 100, § 1. *Id.* 108, § 48. *Id.* 109, § 53.) The judgment recovered by the defendant against Christopher Devoe, on the 7th day of January, 1837, (the title to the real estate being then vested in him,) became a lien upon the real estate which had descended to him from Gilbert Devoe, which could only be defeated by a sale under an order of the surrogate, upon application made to him for that purpose, within three years from the time of granting letters testamentary or of administration, or by the operation of some other lien having the preference. It does not appear whether letters testamentary or of administration upon the estate of Gilbert Devoe have been granted or not. If such letters have not been granted, then Christopher Devoe's title has not, at any time since the death of Gilbert Devoe, been liable to be defeated by any creditor of Gilbert Devoe. If such letters have been granted, and no application has been made to the surrogate for an order of sale, and three years have elapsed since such letters

were granted, then the title of Christopher Devoe can only be defeated by a creditor of Gilbert Devoe, obtaining a decree against him as heir, pursuant to the provisions of law, and causing the land to be sold under such decree. (2 *R. S.* 452, §§ 32, 38, 42, 46, 47, 48.) A decree against the heir at law, in favor of a creditor of the estate, is not a charge upon the land descended, if before the commencement of the suit in which such decree is obtained the land is aliened by the heir. (2 *R. S.* 454, § 49. *Id.* 455, § 51.) In this case, Christopher Devoe having aliened by his conveyance to Charles Storms, a creditor of Gilbert Devoe, before the commencement of any suit against him as heir of Gilbert Devoe, Storms acquired by such conveyance an absolute title to the land, subject to the lien of the defendant's judgment which had been recovered prior to the conveyance. If the conveyance of Christopher Devoe to Storms was not such an alienation as would prevent Storms, or any other creditor, from commencing a suit and obtaining a decree for the sale of the land, yet the sale by the sheriff, under the execution in favor of the defendant, is such an alienation as would prevent any decree obtained against Christopher Devoe as heir at law, in a suit commenced subsequent to the sheriff's sale, from becoming a lien. (4 *Kent's Com.* 431.) If neither the conveyance to Storms nor the sheriff's sale is such an alienation as would prevent a decree in favor of a creditor of Gilbert Devoe from becoming a lien upon the land descended in preference to any lien in favor of a creditor of Christopher Devoe, still the lien of the latter can only be defeated by obtaining such decree; and even then his right of redemption would remain. If the defendant's lien by virtue of his judgment, or his title by virtue of the sheriff's sale, is to be defeated at all, it can only be done by a creditor of Gilbert Devoe, and by a proceeding in conformity with the statute. No such proceeding having been had, and the time for redemption under the sheriff's sale having expired, the defendant's title has become absolute. The complainant in this suit is not a creditor of Gilbert Devoe, nor has he succeeded to the rights of a creditor. He is a mere purchaser of the interest of Storms, acquired under his

Pierce *v.* Alsop.

conveyance from Christopher Devoe, and without covenants of warranty. His only title is under the deed from Christopher Devoe to Storms. He cannot therefore avail himself of Storms' debt against the estate of Gilbert Devoe to perfect his title.

THE CHANCELLOR. The decision of the vice chancellor in this case is unquestionably right. And if the complainant, or those through whom he derived his title to the premises in question, have any remedy, it must be in the character of creditors of G. Devoe, the intestate, and by means of an order of sale to be made by the surrogate. Only about one half of the debt of C. & J. T. Storms was extinguished by the conveyance to C. Storms; and if there was no other property belonging to the intestate, to satisfy the residue of the debt, the surrogate probably has the power to direct a sale of the lot in question to satisfy that indebtedness. There is no allegation in this bill, however, that G. Devoe did not have other real estate sufficient to pay all his debts. Nor does it appear what became of the personal property, which belonged to the intestate at the time of his death. The whole of this bill is based upon the mere fact that the decedent had not sufficient personal property to pay *all* his debts, and that this portion of his real estate was conveyed by the heir at law in part payment of a debt due by the intestate, and at a price not below its actual value. This was not sufficient, even in equity, to entitle that conveyance to a preference over the previous legal lien of Alsop's judgment upon the premises in the hands of the heir at law. To entitle the creditor of the decedent to a legal preference over the judgment creditors of the heir at law, he must himself proceed to a judgment, or decree, against the heir at law for the debt due from the latter in respect to the lands descended from the intestate. Or he must apply to the surrogate for a sale of the land, to satisfy the debts of the intestate, which the personal estate is insufficient to pay.

The allegation in the bill that the Storms were ignorant of the existence of the judgment of Alsop at the time of the conveyance of the premises to C. Storms in part payment of their

debt, did not alter their legal or equitable rights. For the judgment was duly docketed; and it is not pretended that Alsop, the judgment creditor, did any thing to deceive or mislead the Storms in relation to his lien upon the lands which had descended to one of his judgment debtors as heir at law of the decedent.

The bill does not distinctly show that there was any irregularity in the issuing of the defendant's execution. But even if it was irregularly issued, the remedy of the complainant is not in this court, but by a summary application to the court of law to set aside the execution for irregularity, so far as it affects his rights; if he has a remedy any where to correct an irregularity in a suit, against another person, to which he is not a party. The vice chancellor refers to several authorities to show that he has no such right, so far as relates to a question of regularity merely. And the issuing of an execution after the lapse of two years, without reviving the judgment by a scire facias, where all the parties to the judgment are in full life, is an irregularity merely, and does not render a sale under it void.

The decree appealed from is not erroneous, and it must be affirmed with costs.