ANDREW WILSON and others, executors, &c. vs. ANNA F. WILSON and others.

Debts owing by a decedent, or advances made for the benefit of the estate, are not a lien or charge upon land in the possession of the heir, for any substantial purpose, either in law or equity, until made so by proper legal proceedings.

An heir takes an absolute title to the land descended, subject only to be defeated or charged with the debts of the testator or intestate, either by the representatives, or the creditors, taking the steps authorized by statute.

A father, in the belief that he, as the heir of his deceased son, was the owner of the real estate of which his son died seised, paid off some of the debts of the son, to prevent their being charged upon the land, he having also paid a debt for his son previous to his death; but he neglected to take any steps to make his demands a lien upon the land, and the widow of the decedent was afterwards delivered of a child, who became his heir. *Held*, that an action would not lie in behalf of the father's executors, against the heir, for an account between the parties, to restrain the prosecution of a suit at law for use and occupation, and praying for a decree directing the heir to convey the premises, to be disposed of according to the father's will.

IN EQUITY. This was an appeal by the plaintiffs from a judgment of nonsuit, entered upon the report of a referee. The action was brought by the plaintiffs, Andrew Wilson, Abraham Wilson and David Dunlap, as executors of Joseph Wilson, deceased, under the circumstances, and to obtain the relief hereinafter mentioned.

The complaint alledged that the plaintiffs, Abraham Wilson and Andrew Wilson, and the defendants, were the children and grand-children of Joseph Wilson, deceased, except the husbands of the daughters and of the grand-daughters of the said deceased. That Francis Wilson, was a son of Joseph, and married Catharine Stull, the 18th of January, 1832, and died the 12th of June, of the same year, seised of the legal title to the premises in question, but that Joseph was then seised of the equitable title, by reason of his paying for Francis $187, before his death, and about $400, afterwards, towards the purchase money of such premises. That the defendant, Anna F. Wilson, was a daughter of Francis, and born on the 7th of January, 1833. That after the death of Francis, Joseph, in the belief that he was the heir

at law of Francis, and as such the owner of the said premises, (being ignorant that Anna F. was likely to be born,) for the consideration of $666, took an assignment from Catharine, the widow of Francis, of all her right and interest as dower or otherwise in the real and personal property of Francis; paid the debts of Francis, which were a lien on his real estate, to about the amount of $874, over and above what his personal estate was sufficient to pay, by the request and permission of his administrators, and rented such premises to Andrew Wilson, for $75, till Anna F. Wilson should come of age; and that Andrew, in the same belief, paid Joseph therefor $75, and possessed and occupied the premises from the death of Francis till about the month of December, 1849. That on the 29th day of May, 1841, Joseph made his will, giving to his wife, during life, and to his children and grand-children, after her death, his real and personal property, in certain shares. That on the 28th of February, 1850, Anna F. commenced a suit at law against Andrew Wilson, to recover $2200, for the use and occupation of the premises while he was in possession; which suit at law was at issue but not tried. The plaintiffs claimed the following relief: 1st. A stay of said suit at law. 2d. That Anna F. convey the premises, to be disposed of according to the will. Or, 3d. For an account between her and the executors, allowing them for Joseph's payments and advances for the right of dower and debts, with interest, and her for two-thirds of the rent, she retaining the title subject to payment of the balance, one way or the other; and for such other relief as the court might think proper to grant.

The amended answer of Anna F. Wilson, the only defendant who answered, denied all allegations in the complaint, except those particularly admitted. It admitted her birth and relationship to Francis, and his marriage and death as alledged in the complaint. It admitted that Francis died seised of the premises, but denied that Joseph ever had any interest in them whatever. It denied that Joseph ever paid, or became liable to pay, any part of the purchase money therefor; and averred that if he did pay any, he intended it as a loan, gift or advancement for the

benefit of Francis, or of Anna F., and not as giving him any lien upon or interest in, such premises; and .that he never had any such interest or lien. It alledged that Joseph and Andrew well knew, at or very soon after the death of Francis, that Anna F. was likely to be born, his sole heir. That Joseph never believed that he was his only surviving heir; and that when Andrew went into possession of the premises, he and Joseph well knew that Joseph had no right to lease them; and that Anna F. was the true and lawful owner thereof. It denied any knowledge of the assignment of dower mentioned in the complaint; and insisted if there was such, it conveyed to Joseph no other interest therein that what Catharine had in the personal property of Francis. It admitted that Francis was indebted at his death, but not the amount; and denied that Joseph ever paid any of such debts, except under an agreement between him and the widow· and administrators of Francis, that he should take all the personal property of Francis, amounting to $900 or $1000, and pay all his debts, so that they should not be an incumbrance upon the premises in question. It alledged that Joseph, previous to making his will, advanced as outfits to each of his daughters named in the complaint, in land, money and personal property, $2000; and to his son Andrew, in land and money, $4000; to his sons David and Abraham, $2000 each; and to Joshua W. and Aaron, $3500 each; but none, or nothing like as much, to Francis; and claimed, if the relief claimed in the complaint was granted, but not otherwise, an account between the executors and such children; and that such executors be allowed for such advances, with interest; and that such children convey all lands so advanced, or purchased by money so advanced, to said executors, for the benefit of Joseph's devisees, to be disposed of according to his will. It set out a copy of such will; and admitted the commencement of the action at law, and that the same was at issue, as stated in the complaint, and insisted that the same and said will were, both, or either of them, a bar to this action. And it set up the defense that the plaintiffs' cause of action accrued more than six years before the commencement of this action.

The reply denied substantially the allegations of the amended answer; and, particularly, that Joseph made advances to his children, as alledged in said answer; and denied that he agreed with the widow and administrators of Francis, to take all his personal property, and pay all his debts, as therein alledged, or that he paid such debts on any such agreement; and averred that he took such personal property, amounting to only about $895, with the understanding that he was the heir at law of Francis; and denied that the plaintiffs' cause of action accrued more than six years, or more than ten years, before the commencement of this action.

The appellants claimed that the following facts were established by the proofs, viz.: That Francis Wilson was a son of Joseph Wilson, and that he married Catharine Stull, the 18th of January, 1832, and died the 12th of June, of the same year, seised of the legal title to the premises in question. That on the 28th of June, 1832, Joseph Wilson understood and believed that he was the heir of his son Francis, and, as such, the owner of the premises in question; and did so believe, up to the year 1835, at least. That Francis Wilson, at his death, was indebted for the purchase money of the premises, including interest, $412,66; and he was also then indebted on notes and accounts in the further sum of about $945. That on the 28th of June, 1832, Joseph, in the belief that he was the owner of the premises as the heir at law of his son Francis, subject to the right of dower of Catharine, his widow, purchased all her right and interest, as dower or otherwise, in the real and personal property of Francis, and for the consideration of $666, took from her a transfer thereof, and from John Stull, one of Francis' administrators, who was then acting as her guardian, a bond guaranteeing such transfer of her title; and that all the parties to this transaction then believed Joseph to be the owner of the premises, as the heir at law of Francis, and that Joseph would have all the avails of Francis' estate, fully and freely, after his debts were paid by him, by the transfer. That Joseph, in that belief, put Andrew in possession of the premises the last of June, 1832, to occupy and cultivate them. And it may be assumed (inasmuch as the

appellants offered to prove it) that Joseph and Andrew, about a year afterwards, made an agreement that Andrew should occupy them under Joseph, and Andrew then paid him towards such use and occupation the sum of $75. That Andrew continued in such possession about 17 years; and that two-thirds of the rent of the premises during the time Andrew occupied them, was worth $27,66, per year, at $2 per acre. That John Stull and Joshua W. Wilson, administrators of Francis, commenced administering upon his estate a very short time after his death. That they made an inventory of his personal estate, amounting to $846,30½. That they sold the personal estate at vendue, except the wheat and rye, on the 26th of June, 1832, for $599,21. That they sold the wheat and rye to Demott, and on the second of November, 1833, received therefor $154,34; and that the whole amount they received for such personal estate was $753,55; and that with these proceeds they paid the debts of Francis, as far as they would go, and the balance they paid from moneys advanced by Joseph Wilson. That Joseph helped Joshua to pay the notes and debts of Francis, over and above what his personal estate was sufficient to pay, by furnishing him with the money to pay them; and that all this was done without rendering an account to the surrogate; in the full belief, by Joseph and the administrators, that Joseph was the owner of the premises. That in the year 1832, they paid $65,82; and between that and the first of October, 1833, $544,49, when Joseph commenced advancing. That he and the administrators, in the year 1833, advanced $282,64, and in the month of January, 1834, $16,70, amounting to $299,34; and that Joseph then held an account against Francis, for accounts and notes paid for him amounting to $448,25, which the administrators settled with him and allowed. That the defendant, Anna F. Wilson, is a daughter of Francis; and was born on the seventh of January, 1833; and Joseph, believing himself to be the owner of the premises, and in order to make provision for Anna F., on the second of April, 1835, made a note payable to her when she should become of age, for $500. That on the 29th of May, 1841, Joseph made his will; giving his real and personal property to

Wilson *v.* Wilson.

his wife for life, and to his children and grand-children named in the complaint, after his death, dividing it into ten equal shares, and giving to his said children each one share; to Anna F., one share; and to Clarissa and Philinda Demund, one share; and making the plaintiffs, Abraham Wilson and David Dunlap, executors of such will. That Joseph died the 15th day of April, 1849; that his will was proved, and letters testamentary issued to the executors, who entered upon the execution thereof, on the 11th of June, 1849. That in February, 1850, Anna F. demanded and afterwards took possession of the premises, and commenced a suit at law against Andrew to recover the rent, which was at issue, but not yet tried. And she now claimed that the said release of dower conveyed no interest whatever to Joseph, in the premises, as no dower had ever been admeasured or assigned; and that Andrew was liable to pay her for the use and occupation of the premises, without any deduction.

*D. Herron*, for the appellants. 1. The testator, while the bona fide possessor of the premises, as owner, advanced $604,35 to relieve them from a charge which the respondent was bound to pay; and, therefore, his representatives are entitled, in equity, to be repaid such advances by her. (1 *Story's R.* 497, 8. 2 *Id.* 605. 2 *R. S.* §§ 32 *to* 34, 42 *to* 48. 2 *Paige,* 586. 5 *Id.* 561, 563. 6 *Id.* 403 *to* 406. 4 *Barb. Eq. Dig.* 705. *Scott* v. *Dunn,* 1 *Dev. & Bat. Eq.* 425. *Am. Ch. Dig.* 118. *Shepard* v. *McIntyre,* 5 *Dana,* 578. 6 *John. Ch.* 61, 62. *Rosevelt* v. *Post,* 1 *Edw. Ch. R.* 579, 582, 3. *Petteward* v. *Prescott,* 7 *Vesey,* 547. *Montford* v. *Gibson,* 4 *East,* 453. *Story's Eq. Jur.* § 385, *a,* 1437.) 2. They are liable to Andrew Wilson for the rent he has paid, and for costs in case the respondent recovers against him, and they are bound to protect him under his lease. (1 *Cowen's Tr.* 3d ed. 154. 5 *Man. & Ryl.* 64. 10 *Barn. & Cress.* 237. 2 *Hill,* 116. 1 *Id.* 100.) 3. They are entitled to one third of the rent, as the representatives of the testator, the owner of Catharine's dower, in equity. (6 *Paige,* 403 *to* 406.) 4. They cannot set up their claim for advances, in the respondent's action, because they are not parties,

**VOL. XIII.** 33

and ought not to, because they would lose the balance over and above the rent, and Andrew cannot do so, because he has no right to such claim. 5. It would be inequitable to permit the respondent to recover against Andrew, because he would thereby lose the rise in value of the land; if any, his improvements, and the difference between the rent he pays and what she recovers, and the executors would have to pay the costs of that action, besides losing the rent. 6. The executors have therefore a right, in equity, to compel the respondent to set off her claim for rent against their claim for the testator's advances, and, of course, to have an account between them and a balance struck, subject to the payment of such balance, one way or the other, and on such payment, to a decree restraining and staying the respondent's action, and all other actions by her, for the use and occupation of the premises, and if the balance is found in their favor, that she pay it or convey the premises to them to be disposed of according to the testator's will. (*Story's Eq. Jur.* §§ 1436, *a,* 1437, *a,* 852 *to* 856, 876 *to* 880, 885, 904.  6 *Paige's Ch.* 404.) 7. Andrew has a right to call upon the executors to interpose their shield to prevent a recovery by the respondent, and upon the court to decide to whom he shall pay the rent, and when paid, to be protected against further prosecution for it. (*Story's Eq. Jur.* §§ 806, 808, 810 *to* 813, *a,* 816, 817, 824.  4 *Paige,* 385, 391 *to* 393.  *Parks* v. *Jackson,* 11 *Wend.* 443, 449, 450. 2 *Paige,* 199, 200.  *Johnson* v. *Gere,* 2 *John. Ch. Rep.* 546.) 8. The appellants in this action have all an interest in obtaining the relief demanded, and are therefore proper parties. (*Code of Procedure,* §§ 117 *to* 119.  *Edwards on Part. in Ch.* 2.) 9. This suit is properly brought to avoid circuity of action, and a multiplicity of suits. (1 *Story's R.* 498.  *Story's Eq. Jur.* §§ 853, 854, 1439.)  10. The appellants' cause of action accrued when the respondent demanded and took possession of the premises, and brought her action in February, 1850, not when the testator made the advances ; but if not, the appellants' claim for advances, and the respondent's claim for rent, are to be regarded in equity, a mutual, open and current account, and the cause of action accrued at the time of the last item in such account.

(2 *R. S.* 224, § 23. *Code of Procedure*, § 95.) It is therefore not barred. 11. There was no loan by the testator to the administrators of Francis, but he advanced as owner of the premises, and the administrators do not seek to disturb the transaction, but the respondent does; and as the advances were for her benefit and not theirs, they were not necessary or proper parties, but if they were, the appellants should not have been nonsuited therefor; they should have been ordered to be brought in. (*Code of Procedure*, § 122. 1 *Story's R.* 497, 8.) 12. The testator's misapprehension as to the title to the premises, was a mistake of fact as well as law, (*Story's Eq. Jur.* §§ 103, 130,) but if not, it is immaterial. The appellants are not now seeking to deprive the respondent of the land, but she is seeking to deprive them of the rent of it, or of the testator's advances, and has taken it into her own possession, thus disaffirming and repudiating the whole transaction, in which the testator made the advances for her immediate benefit, and breaking up and violating his understanding at that time. This the court will not permit her to do, without repaying such advances to the executors. (6 *Paige*, 403 *to* 406.) 13. The referee erred in granting a nonsuit. In any view, the advances exceeded the rent, and if the appellants were not entitled to stay the respondent's action, nor set off the rent against the advances, then they were entitled to recover the whole amount of the advances, with interest, though this relief was not specifically demanded in the complaint, (*Code of Procedure*, § 275;) provided the respondent will not release her title to the land. And most clearly the appellants are entitled to the relief of repayment, to the extent of the rent, which the respondent is now seeking to recover. She cannot be allowed to take the rent without making compensation for the advances, to that extent. And the appellants are entitled to restrain her from prosecuting any other action for rent or mesne profits.

*John E. Seeley*, for the respondent. I. The administrators of Francis Wilson's estate, John Stull and Joshua W. Wilson, should have been made parties to this suit. The claim that

the legal representatives of Joseph Wilson had (if any) against the estate of Francis Wilson, deceased, for money paid, &c. was against the administrators, and must be adjusted between the executors of Joseph Wilson, deceased, and said administrators. It could not be a lien upon the estate of Anna F. Wilson, inherited from her father, Francis, until proper steps had been taken to settle the amount due, and sale made upon the application of the administrators to surrogate to pay debts, &c. (*Covell* v. *Weston and others*, 20 *John.* 414.) II. The legal title to the twenty acres was in Francis Wilson, deceased, and his posthumous child, Anna F. Wilson, the defendant, inherited the same. Andrew Wilson and Joseph Wilson, both knew of the birth of Anna F., at or near the time, and that she was the child and heir of Francis. The claim that Joseph Wilson believed he was the heir at law of Francis, was a mistake of law merely. Money paid under such circumstances is considered a gift; and cannot be recovered back. (*Mowatt and others* v. *Wright*, 1 *Wend.* 355. *Doug.* 471. *See* 7 *Paige,* 137.) III. The agreement between Andrew Wilson and Joseph Wilson to lease Anna F. Wilson's land was an unlawful agreement and void. (1 *R. S.* 732, 2d ed. § 147. 4 *Kent's Com.* 446. 1 *Cowen's Tr.* 129, 240, 2d ed.) The money alledged to have been paid by Andrew Wilson to Joseph Wilson for rent of twenty acres was in violation of the provisions and spirit of the statute, and could not be recovered back. (*Perkins* v. *Savage,* 15 *Wend.* 412. *Comyn on Con.* 589, *New-York ed.* 2 *Wils.* 341, 347.) The making said lease was a misdemeanor. (2 *R. S.* 576, § 6. 4 *Kent's Com.* 447.) Deeds of lease are grants. The offer to show such a contract, was therefore properly rejected. IV. The conveyance of the widow's dower right to Joseph Wilson, before the same had been assigned or admeasured to her, was void. The absolute receipt of an assignment before the widow has any estate, is thus stated by Mr. Cruise, in his digest: "Upon the death of the husband, the right to dower which the wife acquired by the marriage, becomes consummate; but unless the precise portion of land which she is to have is particularly specified, as was formerly sometimes done, she cannot enter till dower is

assigned to her; for she might, in that case, choose whatever part of the lands she pleased, which would be injurious to the heir. The widow has therefore no estate in the lands of her husband, till assignment, for the law casts the freehold on the heir, immediately upon the death of the ancestor." (*Cruise's Digest, tit. 6 of Dower, ch.* 3, § 1.) The right of dower, until it is duly admeasured and assigned, cannot be aliened so as to enable the grantee to maintain an action for it in his own name. (*Jackson ex dem. Totten,* v. *Aspell,* 20 *John.* 412.) Until assignment, she has a right of action only ; she could not convey. (*Scott* v. *Howard,* 3 *Barb. S. C. Rep.* 319, 321. *Green* v. *Putnam,* 1 *Id.* 506.) The widow may release, but she cannot before her dower is assigned, invest another person with a right to maintain an action ; nor can she convey or assign it. (*Id. Ritchie* v. *Putnam,* 13 *Wend.* 524. 10 *Id.* 414, 419. 2 *Cowen,* 651. 17 *John.* 168. 20 *Id.* 412. 4 *Kent's Com.* 61. 2 *Comst.* 245.) V. Her conveyance of dower, as the widow of Francis Wilson deceased, could not transfer any interest belonging to Anna F., as her guardian, in socage. (13 *Wend.* 524, 526.) The conveyance and guaranty was improperly admitted. The widow could not control the real estate of her child ; and the conveyance of her dower right does not assume to convey any other than her own right. VI. There was no money furnished the administrators to pay debts, until October, 1833, by Joseph Wilson, deceased, and about nine months after the birth of Anna F., and when Joseph Wilson knew he was not the heir of Francis. The payment of a debt under such circumstances, could create no lien. It was a gift. (1 *Wend.* 355.) VII. The sum of $187,14, alledged to have been paid or loaned to Francis, by Joseph Wilson, April 7, 1832, was an advancement. (1 *R. S.* 744, §§ 23, 24, 25.) If the father buys land and pays for it, and has the deed made to the child, the inference of law is that it is an advancement to the child, and not a resulting trust. (5 *Barb.* 432.) His last will and testament considers it an advancement. VIII. There can be no such thing as a resulting trust in favor of the party paying the money. (1 *R. S.* 722, §§ 51, 52, 53. 5 *Barb.* 433.) Voluntary conveyances are effectual

Wilson v. Wilson.

between the parties, and cannot be set aside by grantor, although he afterwards becomes dissatisfied with the transaction. 1 *Stor. Eq. Jur.* 371.) IX. If the payments made by Joseph Wilson, deceased, of the debts of Francis, or the loans made to the administrators of Francis' estate, created a debt against the real estate of Francis, the statute of limitations applies. More than seventeen years have expired since the cause of action, if any, accrued. (1 *Sand. S. C. Rep.* 220.) X. On the 29th day of May, 1841, Joseph Wilson made his will, and in the same declares, "at sundry times and ways previous to making said will, he has distributed to each of his heirs-at-law the share that it had been his pleasure during his lifetime, to bestow on each of them respectively." This shows it to be an advancement, and so intended by the testator; and the will is a bar to this suit. (1 *R. S.* 744, §§ 23, 24, 25.) XI. The relief demanded in the complaint could not be granted, even if Anna had received the twenty acres charged specifically with the payment of the money. (5 *Barb.* 399.) Her personal estate should be first exhausted, or the remedy against her personally should be exhausted, before the lien could be enforced against the land subject to the charge. (*Id.* 412.)

*By the Court,* JOHNSON, J. The grounds upon which the plaintiffs rely to maintain this action are that Joseph Wilson, the testator, in the honest belief that he was the owner of the real estate as the heir at law of his son Francis, paid off debts against the estate which were a lien and charge upon the land. And that the defendant Anna F. Wilson, the real heir at law of Francis, and the true owner of the inheritance, having taken the inheritance from the possession of the lessee, Joseph Wilson thus relieved and disencumbered of this charge, is liable in equity to account and pay to the personal representatives of Joseph, the testator, the amount of such indebtedness. If that were the true state of the case, I am clearly of the opinion that an action to obtain equitable relief of this character might be sustained, at least in favor of the heirs. The principle of subrogation would apply in such a case with peculiar force. The

Wilson *v.* Wilson.

court would substitute the bona fide occupant who had paid off the lien or incumbrance in good faith, supposing himself the owner, in the place of the creditor, and give him the benefit of the lien as against the real owners taking the estate thus disencumbered even after a recovery at law. (*Bright* v. *Boyd,* 1 *Story,* 478. *S. C. Id.* 605.) This court decided the same principle, in this district, in the case of *Cornell* v. *Verscelins and others.* In the latter case the plaintiff Cornell had purchased the land of the executors of Starkey under a supposed power in the will. While in possession he furnished money to pay off a mortgage, under which the premises had been sold, while the act authorizing a redemption from such sales was in force. Afterwards the heirs of Starkey repudiated this contract of the executors, and brought ejectment against Cornell and recovered possession. On a bill filed by Cornell against the heirs, this court subrogated him to the rights of the purchaser under the mortgage sale, and decreed that the amount so paid should be a lien upon the land, in the hands of the heirs. In *Bright* v. *Boyd,* it will be seen that the debts of the testator had been made a charge upon the land, and the land sold by the administrator under the authority of law, for their payment. The authority was not regularly executed, and the title of the purchaser in consequence failed. But the debts were paid and the land relieved from the charge, and the bona fide purchaser was therefore properly substituted in the place of the creditors and the lands charged in his favor. That case also goes farther, and holds that the bona fide purchaser and possessor may also sustain a bill and recover for permanent meliorations and improvements made by him after the true owner has recovered possession at law. So far the case is opposed to the authority of *Putnam* v. *Ritchie,* (6 *Paige,* 390.) But that question is not raised in this case.

Here however, neither the demands of the testator against the estate of his son, nor those paid off by him to other creditors of the estate, were ever any lien or charge upon the land in question. The lands were purchased by the son, of Stull. A portion of the purchase money was paid, and the balance secured

by the note of Francis signed by his father Joseph as surety, which was given directly to Leconte, a creditor of Stull, and Stull conveyed absolutely. It is clear, therefore, that there was no lien, even in equity, upon the land, for the purchase money. Stull had none, nor had Leconte. And the mere circumstance of the father's signing the note as surety would give him none where none was retained by the vendor. Had he loaned the son all the money to make the purchase, it would have given him no lien upon the land when purchased. (*Collinson* v. *Owen*, 6 *Gill & John.* 4.)

So far therefore as the testator had loaned money to the intestate, or paid demands for which he was surety, he was a mere creditor of the estate. And allowing him to be subrogated to the rights of the other creditors whose debts he paid—which is the most these plaintiffs can claim—he could be regarded as nothing more. As I understand the case, this was his own view of the matter; for he presented his claims to the administrators and had them allowed. Thus he was in a situation to have made his demands a charge upon the land, by instituting proper proceedings. But this he did not do. All his claims, therefore, remained mere debts against the personal representatives of the intestate, or against the heirs in respect to the land descended, after the personal estate was exhausted. The heir took an absolute title to the land, subject only to be defeated or charged with the debts of the intestate either by the representatives or the creditors taking the steps authorized by statute. (*Pierce* v. *Alsop*, 3 *Barb. Ch. Rep.* 186, 187, 195. *Covell* v. *Weston*, 20 *John.* 414.) It may perhaps be said, in a loose general sense, that unpaid debts are a charge upon the land in the hands of the heir after the personal estate is exhausted, because they may be made a charge. But they are no lien for any substantial purpose, either in law or equity, until made so by proper proceedings.

Conceding, therefore, that the testator, in the bona fide belief that he was owner as heir, paid off some of the debts of intestate to prevent their being charged upon the land, and neglected to take any steps to make his own demands a lien, what follows?

Wilson *v.* Wilson.

The debts never having become a lien or charge, his mistake as to his rights could not make them so.

It is not pretended that any permanent improvements have been made upon the land, and it has never been charged with any debts ; and it is not perceived how the fact of the owner having taken rightful possession of it raises any equity in favor of the plaintiffs, to sustain this action. She has not taken the land relieved from any burthen, for none was ever imposed upon it. The demands still remain as they were originally, demands against the administrators or against her personally in respect to the lands descended, unless the statute of limitations has run against them. It is only on the ground of some equitable interest in the land that a suit of this kind can be sustained.

There can be no pretense of fraud in the case. It cannot with any show of reason be alledged that the defendant stood by and permitted the testator to make these payments and take possession, without giving notice of her title. She was then a mere infant, and incapable of comprehending, much less protecting, her rights. Neither her acts nor her silence, under such circumstances, prejudice her rights. (*Putnam* v. *Ritchie*, 6 *Paige*, 402.) I confess I do not see what is to prevent the statute running against these demands. If the testator in paying off the creditors of the estate of the intestate, so far as he did pay them, acted in the belief that they were or might be chargeable upon him in respect to the lands descended, that was clearly a mistake of law for which he alone was responsible, and would not I apprehend prevent the statute operating upon them. It is perfectly certain that he knew all the facts necessary to a correct understanding of his rights. He knew of the birth of the defendant, immediately after it happened, and there is not a particle of evidence to show that he acted under erroneous advice as to his legal rights. He represented to his counsel, at the time of making the bargain with the widow, that his son had died without issue. But this was several months before the birth of the defendant, when he might have supposed such to be the fact. It is not to be presumed that any one having any knowledge of the law could have advised him that he could

inherit the estate of his son, to the exclusion of the posthumous child, and it is not shown that he was so advised.

Indeed were the whole case to turn upon the question as to whether the testator really believed he was the true heir and owner, after the birth of the defendant, it is quite doubtful whether this action could be sustained. It is true there is some general evidence as to what he believed and supposed, and more of the same tenor offered. But looking at his acts, it seems to me they all tend to a different conclusion. To be sure he took possession of the land, and leased it to the plaintiff Andrew. But the complaint expressly alledges that it was leased until the defendant should arrive at the age of twenty-one years. But again; by his will he undertakes to dispose of all his estate real and personal which he had not before conveyed and disposed of, and does not undertake to devise this land. Still further, why bring in his account against the estate and have the administrators allow it? All these acts tend strongly to show that he was by no means ignorant of the defendants' rights. But the nonsuit was not asked for on this ground, and I forbear to comment further upon it.

The question of the right of the widow's dower interest rests upon different principles. I am inclined to the opinion that in equity, the purchase by Joseph Wilson of the dower right of the widow will be protected as against the claim of the heir, for rent, within the principles asserted in *Putnam* v. *Ritchie.* Although there was never any assignment of dower, and therefore no title which could be assigned or conveyed, yet equity will notice the interest and protect it, where it can do so, by way of compelling a party to do equity who comes into court asking for relief. The widow might have disaffirmed her bargain when she became of age, but she did not, and after this lapse of time must be taken to have sanctioned it after attaining her majority; at least as against the claims of the heir. But there was no necessity of bringing this suit to protect that interest, if indeed the executors, as such, had any thing to do with it. The plaintiff Andrew, the lessee as he claims to be of Joseph Wilson, could have availed himself of that as a defense

to the suit against him for the use and occupation of the premises so far as to prevent a recovery of two-thirds. Equitable defenses are now allowed, so far as to prevent recoveries at law where they could not be had in equity. Or in other words equitable defenses to defeat inequitable recoveries on mere legal demands. He could certainly in that suit use the equitable rights with which his lessor was clothed, to protect himself against an unjust recovery. The right which his lessor had was not an interest in the land, but an interest in the rents and profits of the land, in equity. And as the rents and profits are the subject of that suit, I see no difficulty in adjusting it there. I am therefore of opinion that the nonsuit was properly granted, and that the judgment of the special term must be affirmed.

[CAYUGA GENERAL TERM, June 7, 1852. *Selden, T. R. Strong* and *Johnson,* Justices.]