GERTRUDE FONDA, Respondent, *v.* JAMES R. CHAP-MAN, Appellant.

*Application to sell lands of deceased, to pay debts—how far mortgagees and purchasers from heirs are protected—1869, ch. 845; 1873, ch. 211.*

November 30, 1872, one Close died, intestate, leaving him surviving a daughter, his only child and heir-at-law, to whom certain real estate of which he was seized, descended, and of which she took possession. Thereafter, and on April 29, 1876, she mortgaged a part of the real estate to one Brown, who thereafter assigned the mortgage to the defendant Chapman, who, on January 20, 1880, commenced a statutory foreclosure thereof. On December 30, 1879, letters of administration upon the estate of Close were, for the first time, issued to the plaintiff, as a creditor; the intestate having been indebted to him upon certain notes, the interest upon which had up to that time been paid by the daughter. On April 6, 1880, the plaintiff instituted proceedings to have the land mortgaged, leased or sold, for the payment of the intestate's debts, and on April 21 brought this action to have the defendant restrained from proceeding with the foreclosure of his mortgage.

*Held*, that the action could not be maintained.

Chapter 845 of 1869, as amended by chapter 211 of 1873, providing that no real estate, the title to which shall have passed out of any heir or devisee, by conveyance or otherwise, to a purchaser in good faith and for value, should be sold unless letters have been applied for within four years from the death, nor unless an application for a sale has been made within three years after the granting of letters, applies to and protects one taking a mortgage upon the real estate, within the times therein specified, provided the said time has elapsed before proceedings to sell the land for debts have been commenced.

Appeal from an order granting a temporary injunction.

This action was brought to restrain the defendant from proceeding by a statutory foreclosure to sell certain real estate formerly belonging to Lewis P. Close, deceased, during the pendency of proceedings before the surrogate, for a sale of the said premises to pay the debt of the said Close. The defendant claims under a mortgage executed by Maria A. Root, daughter and sole heir-at-law of the said Lewis P. Close, which is the mortgage sought to be fore-

closed. The plaintiff is a creditor of the said Lewis P. Close, and claims that her lien as such creditor is superior to the claim of the defendant, and that her right to have the property of the said Close applied to the payment of his debts is superior to the right of the defendant to sell the property under a mortgage given by the heir-at-law. Lewis P. Close died November 30, 1872, and letters of administration upon his estate were issued to the plaintiff as a creditor, December 30, 1879.

*Putnam & Eustis*, for the appellant in each case.

*Charles S. Lester*, for the respondent.

LEARNED, P. J. :

Lewis P. Close died November 30, 1872, intestate, and indebted to the plaintiff on notes, past due. He left surviving Maria A. Root, his only child and heir. At his death he was the owner of real estate, which descended to her, and of which she took possession. No letters of administration were issued on his estate until December 30, 1879 ; when they were issued to the plaintiff as a creditor.

On April 29, 1876, Maria A. Root executed a mortgage to Orton J. Brown, on a part of the real estate, which had thus descended to her. Brown assigned the same to Chapman, and on January 20, 1880, Chapman commenced a statutory foreclosure. On April 6, 1880, the plaintiff presented to the county judge (the surrogate being incompetent), a petition for authority to mortgage, lease, or sell lands of the intestate for the payment of debts. That proceeding is still pending. On April 21, 1880, the plaintiff commenced this present action, by which she asks to enjoin Chapman from proceeding with the foreclosure of his mortgage. An injunction *pendente lite* was granted, and the defendant appeals.

It appears, also, that another mortgage on these premises was given by Maria A. Root to Brown, May 1, 1875 ; and that another mortgage on the same premises and on other premises, which also descended to her from the intestate, was given by her to one Walbridge, May 30, 1876. It also appears that she paid the interest on the plaintiff's notes until January, 1879 ; and also, that Brown, be-

fore taking the mortgage in question, inquired of her whether the intestate left any debts, and was informed by her that he did not.

It is elementary law that the heir takes an absolute title to the land of the intestate, subject only to be defeated, or charged with the debts of the intestate, in the manner provided by the statute. (*Covell* v. *Weston*, 20 Johns., 414; *Pierce* v. *Alsop*, 3 Barb. Ch., 184; *Wilson* v. *Wilson*, 13 Barb., 252.) Mrs. Root was at once the legal owner, on the death of her father, and had a right to mortgage or sell. The purchaser, or mortgagee, took a valid conveyance, subject only to be defeated by the statutory power.

As the land thus descended to the heir, she became liable for the debts to the extent of the land descended. (2 R. S., m. p. 452, §§ 32 *et seq.*, 49, 51.)

Another statutory remedy has been given; the sale by order of the surrogate. Before the Revised Statutes, a similar proceeding was to be had " as soon as conveniently may be." (1 N. R. L., 450.) This meant, within a reasonable time. (*Mooers* v. *White*, 6 Johns. Ch., 360 ; *Jackson* v. *Robinson*, 4 Wend., 478.) The revisors limited the time to three years after appointment. (2 R. S., m. p. 100, § 1, Rev. Notes.) As administration might be granted, long after the death of the intestate, a lasting uncertainty remained. Hence chapter 845 of Laws 1869, amended by chapter 211 of Laws 1873, provided that no real estate, the title to which shall have passed out of any heir, or devisee, by conveyance or otherwise, to a purchaser in good faith and for value, should be sold . . . . unless letters . . should have been applied for within four years from his death, nor unless application for such sale should be made within three years after the granting of such letters. This limited even sales in proceedings commenced by creditors. (See *Ferguson* v. *Broome*, 1 Bradf., 10.)

This statutory power' has been loosely called a lien. But the language is not accurate. In *Matthews* v. *Matthews* (1 Edw. Ch., 565), V. C. McCoun well said that the debts of the decedent were not a lien, and he refused partition on that ground ; adding that, if they were a lien, the amount thereof might be ascertained on a reference and paid out of the proceeds. The language of McLean, J., in *Watkins* v. *Holman* (16 Pet., 62), was used in reference to

the validity of a special act of Alabama. In *Jewett* v. *Keenholts* (16 Barb., 193), the only question was whether crops passed under a surrogate's sale. Mr. Justice BARCULO, in *Hyde* v. *Tanner* (1 Barb., 75), merely calls this " *a kind* of statutory lien."

Nor do we see that there is a question of equity between these parties. Each is acting in good faith. The plaintiff is seeking to collect her debt out of these lands by a statutory proceeding. The defendant is seeking to enforce, on the same lands, his lien, by another statutory proceeding. No fraud is alleged on either side, and each is pursuing a legal remedy.

And it might, with much force, be said, therefore, that these parties should be left to their legal remedies, and that the question which title should prevail, viz., that under the foreclosure or that under the surrogate's sale, should be determined in a controversy between the respective purchasers.

But the plaintiff insists that the execution of the mortgage did not pass the title out of Mrs. Root. It is well known that a mortgage, in this State, is treated as a security for a debt. But in construing a statute like this, we must inquire what was its object. And the object plainly was to permit heirs and devisees to deal freely with the land, unembarrassed by the danger of a sale under a surrogate's order, after a certain time had elapsed; or rather, to make it safe for others to deal with them. Now, saying that a mortgage which should cover (for instance) the full value of the property is not a passing of title, under the statute, would be adhering to the strict letter instead of accepting the plain spirit. This is apparent, also, from the proviso added in chapter 211 of Laws of 1873, for the filing a notice of *lis pendens* during an action against an executor and for the removal thereof.

It may be suggested that, as the mortgage was executed within four years from the death of Close, the mortgagee is not protected, even assuming that the conveyance was a passing of title. But the contrary was decided in *Parkinson* v. *Jacobson* (25 Sup'm. Ct., 353). There a conveyance was made by the heir, and a mortgage taken back, two years after the death of the ancestor. On a foreclosure of this mortgage, when some ten years had elapsed and no letters had been issued, it was held that, under the act of 1873, the

purchaser at the mortgage sale took a good title. To the same effect is *Waring* v. *Waring* (3 Abb. Pr., 246). And the language of the statute is expressly a limitation on the time within which the surrogate may order a sale of property of which the title shall have passed out of the heir or devisee.

It is suggested that the claim on the plaintiff's notes has been barred by the statute of limitations. On this we express no opinion.

It is argued by the plaintiff that the defendant's lien may, by foreclosure, make in the purchaser an absolute title. Assuming that this might be so, we do not think that the defendant should be enjoined. Whatever rights he obtained by his mortgage he should be allowed to enforce. There is nothing inequitable in his doing so.

The order should be reversed, with $10 costs, and printing disbursements.

Present—LEARNED, P. J., and WESTBROOK, J.

Order reversed, with $10 costs, and printing disbursements, and motion for injunction denied, with $10 costs.