## TOTTEN *v.* STUYVESANT, *et al.*

---

Where heirs agree upon an amicable provision and pass mutual and confirmatory deeds of release, it is no objection to a title in foreclosure against one heir and his wife (who had mortgaged) that the wives of any other of the heirs had not joined in the release ; they would, on an assertion of right of dower, be restricted to their husbands' divided share.

Nor, in such a case, where one heir was dead at the time of the partition and execution of the releases, but a share was set aside for his representatives and his widow survived and confirmed the same, could it be considered an objection to title that she might be dowable as out of the whole descendible property as undivided.

Where all parties in interest are before the court, an informal notice of *lis pendens* filed in a suit prior to the act of May, 1840, will not affect the decree.

An irregularity in the amendment of a pleading shall not affect a decree.

Where an advertisement to appear is had against a non-resident defendant in a mortgage case, the statute in relation thereto must be strictly complied with, provided such defendant be the particular party affected ; and in such case, therefore, the master must return the proofs and examination with his report. This, however, is not absolutely necessary where such absent defendant is a mere secondary party not required to pay or account.

---

*Dec.* 17,
1841.

*Partition.
Husband
and wife.
Dower.
Amend-
ment.
Decree.
Practice.
Lis pen-
dens.
Absent de-
fendant.
Master's
report.*

MOTION, on the petition of Adam Thomson, to be discharged from his purchase at a master's sale under a decree of foreclosure.

By the will of the late Nicholas W. Stuyvesant, an amicable partition had been made, by his executors, among his heirs ; and although the court of chancery had declared the will to be invalid, yet the heirs had confirmed the partition by mutual deeds of release. The defendant in this suit, Peter Stuyvesant, was one of those heirs ; and he and his wife had executed a mortgage on a part of his share, which was foreclosed in this suit and a sale had. It will not be necessary to mention here every objection taken by the purchaser ; and only those of seeming moment will be referred to.

The first objection which the purchaser made was on the ground that the confirmatory deeds of release had never been

executed by the wives of the heirs; and that, therefore, they had rights of dower over undivided shares.

Another objection was based upon this: one of the heirs, Robert R. Stuyvesant, had died prior to the partition; but, in the division, an equal share was set apart for his representatives. His mother, having a life estate, sanctioned the partition as did his widow (having a dower right) and also his brothers and sisters, entitled as his heirs; indeed, the widow had commuted and released her dower. It was, however, now insisted, that she might claim dower as widow in an undivided share.

The purchaser considered the notice of *lis pendens* in this suit insufficient, because it described the said Peter Stuyvesant and wife as the sole defendants, not adding *and others;* described the lot as No. 214, but made its east boundary 200 feet instead of 175 feet from the first avenue, which would have been correct as applied to the next lot (215;) omitted other particulars as to the description of the mortgage required by the law of 1840 before a decree could be had; and was dated on the nineteenth day of October, one thousand eight hundred and thirty-nine and stated the bill to be then filed, whereas such bill was not filed until the twelfth of November in the same year.

Another objection was, that there had been an irregularity in amending the bill, as of course, by striking out; whereas, it was said that such an amendment could only have been made upon an application to the court.

An objection was also taken, because the order to advertise non-resident defendants required a publication of nine months, whereas it had been published in the state paper only eight weeks.

And, coupled, with this objection, was another, namely, that as there were these non-resident defendants (but who were not the mortgagors) the master's report ought to have stated or annexed the proofs taken before him as required by statute.

Mr. *J. F. Mitchell*, for the purchaser.

Mr. *Sherwood*, for the complainant.

THE VICE-CHANCELLOR:—The lot in question, No. 214, was one of the lots which, in the division of the estate of Nicholas William Stuyvesant, fell to the share of Peter Stuyvesant, one of his sons, and which the latter mortgaged to the complainant.

In the case of *Stuyvesant* v. *Root,* before the Chancellor (and in error, 18 Wend. 257,) involving the question of title to another lot in the same division and held by Peter Stuyvesant in the same manner, the Chancellor decided that Peter had the fee of the lot and was capable of conveying a good title to the purchaser and decreed the purchaser should take. This decree was affirmed by a large majority of the senators who concurred in opinion that the will of Nicholas William Stuyvesant was void and that the title had passed by descent to his children, against the opinion of the judges of the Supreme Court, who all agreed that the will was valid, except the power to lease for sixty-three years ; and that the children of the testator took only life estates under the will.

The decree of the Chancellor, affirmed as it was, must nevertheless be deemed conclusive on that point as between any of the heirs and purchasers under them ; and it moreover goes far, if it be not conclusive, to establish that the allotment and division of the real estate, made by the trustees under the power and in the manner prescribed by the will, followed by the execution of mutual deeds of release among the heirs, was an effectual partition which vested them with titles, in severalty, to the respective lots or parcels set apart for each ; and that the widow, Catharine L. Stuyvesant and the sister-in-law, widow of the deceased brother Robert R., had effectually divested themselves of their respective rights of dower. If it were not so expressly decided, it was, at least, taken for granted that such was the case. The specific objections now taken to the title were not, however, presented in that instance ; and it, therefore, becomes necessary to consider them here.

The first objection is that the deeds of release confirming the partition and mutually releasing to each other the parcels in severalty, were not executed by the wives of the tenants in common ; and hence it is apprehended that those *femes covert* may still claim their rights of dower in undivided shares of the estate as though no partition had been made. An affidavit laid

before me shows that several of the tenants in common were unmarried men at the time of the partition and execution of the deeds; and with regard to those who were married and whose wives have not executed the deeds, I think the objection cannot be allowed to prevail. The partition was effectual. It was made in good faith. It was equal, quantity and quality relatively considered. At least, there is no suggestion, much less proof, of the contrary. It was consummated by reciprocal deeds of release among all, except as to the share of Robert R., who had died, and by exclusive possession of the different shares in severalty and by acts of ownership and acquiescence in such possession and ownership ever since. Under such circumstances, the dower rights attach to the shares in severalty of the respective husbands. If ever those *femes covert* come to assert such rights, they will be restricted, both in law and equity, to the allotments of their husbands and will be estopped from seeking to have dower assigned on undivided shares of other parcels. By confining them to the equal shares which their husbands take in the partition, they have all the dower that the law gives them. This seems so clear a proposition in itself as to require the citation of no authorities.

The second objection is: that the widow of Robert R. Stuyvesant (now Mrs. Peckham) may claim dower in an undivided share of the estate which descended to him and of which he died seised. He died before the partition was made; but, nevertheless, in the division, an equal share was set apart and allotted as the share which would have belonged to him; and to this his mother assented, who took a life estate in it under the statute of descents, as did also his brothers and sisters (the other parties to the partition) and who were entitled to the reversion. As to all these parties, it became a valid and effectual partition and an acceptance of that share of the estate to be held in severalty which they could not afterwards gainsay or disturb. And so with respect to his widow; she assented to take her dower in the portion of the property thus set apart as being the share and seisin of her husband and she, on the first of May, one thousand eight hundred and thirty-five, entered into articles of agreement with the heirs, by which she commuted her dower and all that she was entitled to as widow of Robert R. Stuyvesant for a gross sum

or an annuity which was covenanted to be paid to her and there-upon executed to them a release under seal of her dower in that part of the estate. This amounts to a full recognition that her dower had attached there and that she was willing to take it out of the part which was partitioned off to her deceased husband ; and having received satisfaction for her dower and discharged those lands from it, she is most effectually estopped from ever asserting the same right of dower again in other lands. Nor is it shown that she pretends to any such right or claim. On the contrary, it is shown that she does not.

The third objection is, that the widow, Catharine L. Stuyvesant, is not effectually barred of her dower in the whole estate of her deceased husband Nicholas William Stuyvesant. I think it is very clear, however, that by the articles of agreement between her and her children, she, in consideration of a provision in lieu of dower, not only agreed to release, but did thereby absolutely release and discharge the whole real estate, including the lot now in question, from all claim of dower. I am satisfied she cannot avoid the deed on the ground of a failure of consideration from the circumstance that the married women, who were parties to it, have not duly acknowledged its execution. The court of chancery will remedy that defect, if it should become necessary, and quiet the title of a *bona fide* purchaser against any advantage of that sort.

I am at a loss to perceive the application or reference which the fourth objection has to any thing in the papers before me ; but if it refer to any thing in the articles of agreement between the widow and her children, just mentioned, it amounts to an absolute relinquishment of her dower and enures by way of estoppel, at least, to the benefit of purchasers.

The judgment referred to in the fifth exception is no longer an incumbrance ; it is understood to be discharged by the will of the father, in whose favor it was entered, and though it may stand open of record, it can never be enforced and may be, at any time, satisfied of record.

There is no force in the sixth objection, in relation to the effect of the deed of assignment from Peter Stuyvesant to Martin and Platt. It is to all intents and purposes a conveyance in trust to sell for the benefit of creditors. The power to sell is declared ;

and the trust is expressed to apply the proceeds in payment of the grantor's debts. The whole object of the deed is that; and I have no doubt of its validity under the revised statutes in relation to trusts to pass the title and to prevent subsequent judgments against the grantor from attaching as liens upon any part of the real estate assigned. Hence, it was not necessary to make such subsequent judgment creditors, if any there be, parties to this foreclosure suit.

I now come to the objections taken to the proceedings in such foreclosure suit. And first, as to the notice of *lis pendens* filed 12th November, 1839, at the time of filing the bill. This was before the act of May 14th, 1840, and at a time when it was deemed necessary to make all persons, having any claim or incumbrance upon the mortgaged premises, parties to the suit. I must presume that all such were made parties, since nothing is suggested or alleged to the contrary. However defective, then, the notice might be, still, all parties having any interest would be bound by the decree. Where all such were made parties, the notice required by the old law might be dispensed with altogether; its only object was to prevent persons acquiring an interest *pendente lite*, from interrupting the course of the proceeding; and it is not shown that there has been any change of interest pending the suit. There is no danger, therefore, to the title of the purchaser, on account of any defect in or omission of the notice required by the practice of the court, previous to eighteen hundred and forty; but the act of the fourteenth of May, eighteen hundred and forty, dispensed with the necessity of making subsequent judgment creditors parties to a bill of foreclosure and, by way of substitute, provides for the filing of a notice, very particular and full in its terms and forbids the making of a decree, unless proof be produced to the court that such notice has been filed for, at least, forty days. The object of this requirement is to bind all such judgment creditors as have been omitted as parties to the suit as effectually as though they had been brought in as defendants. But this object is attained in the present case in another way, viz., by having made them parties. All persons, who had or are shown to have had any interest in or claim upon the lot in question, are bound by the decree, although it may have been obtained upon a defective notice of *lis pendens* and by false

proof or misrepresentation of the solicitor or counsel at the time of moving for the decree. There is nobody who can be permitted to take advantage of this defect, because nobody is prejudiced by it; and I am satisfied the title of the purchaser under the decree can never be disturbed on that account. These remarks apply as well to the misdescription in the location and boundary of the lot, contained in the notice, as to the omission of the names of some of the parties to the suit and other discrepancies apparent on the face of the notice.

The next objection is, on account of a supposed irregularity in amending the bill, by striking out the name of a defendant, after an order taking it as confessed, and going on without entering a new order taking the amended bill as confessed. If this be an irregularity, it is one which cannot now be taken advantage of by any party to the prejudice of the decree ; and so with respect to other matters of mere irregularity. The order for advertising non-residents required, on its face, through clerical mistake, a publication weekly for the whole time it had to run ; but in the state paper it was published for eight weeks only, while in the other paper it appeared weekly for nine months. This is another instance of the great carelessness with which the proceedings in the suit have been conducted ; but, as the statute appears to have been more than complied with, the validity of the decree is not affected.

The remaining objection is, that the master's report does not state or report the proofs taken before him, as required by the statute. There being non-resident defendants, against whom the bill was taken as confessed for want of an appearance, a reference was had to a master " to take proof of the facts and circumstances stated in such bill." The statute directs " that the master, to whom such reference is made, shall take such proofs as shall be offered, &c. ;" and a subsequent section declares "the master shall report the proofs and examinations had before him ; and on the coming in thereof, the Chancellor shall make such order thereupon as shall be just." Now, all this is certainly necessary; and the statute, in these respects, must be complied with where the object of the suit is to reach the property of a non-resident or absent defendant with a view to its application to the payment of a debt which he owes or to compel the performance of some duty by such absentee or non-resident,

for the statute proceeds to point out the mode of enforcing the decree by sequestration of the property of such defendant or by causing its delivery to the complainant, where the bill demands any specific property. It will be perceived, by looking attentively at the statute, that it is only in such cases that there is any reason for a strict compliance with the directions of the statute about the taking and report of the proofs ; and as, in this case, the reason does not exist, there can be no danger to the decree from an apparent defect in the master's report. The decree does not seek to enforce the payment of a debt nor the performance of a duty against the non-residents. Its only effect is to bar them of an equity to redeem in the place of the mortgagor and that equity is now, by the statute, reduced to a right, within a limited time, to file a bill for an account against the mortgagee and to recover the surplus, if any, over and above the payment of the mortgage debt and costs, but not to disturb or prejudice the title of a purchaser : 2 R. S. 188, sec. 138.

None of the objections raised by the purchaser, Mr. Thompson, appear to be well founded, at least they are not sufficient to excuse him from completing his purchase at the master's sale ; and his petition must be denied. But the circumstances of apparent irregularity and defect in form which have been allowed to attend the proceedings in this foreclosure suit, though unavailing for the purpose of disturbing the decree, may reasonably enough be allowed as a justification for the purchaser in bringing the points before the court. I shall not give costs against him, but leave the parties respectively to bear their own costs.