Polhemus v..Empson.

---

## POLHEMUS vs. EMPSON.

1. A voluntary partition between tenants in common, in all respects fair, equal and just, upheld, and a lien upon the lands held in common, under a judgment against one of the co-tenants, held to have been transferred to the lands conveyed in the partition to the judgment debtor.

2. If a judgment debtor has committed waste of premises held by him and another person as tenants in common thereof, a purchaser at the sale of his interest in the property under execution on the judgment must, in equity, accept the position of the debtor in respect to the partition; for partition in equity will be made on equitable terms and principles.

---

Bill for relief.   On final hearing on pleadings and proofs..

*Mr.. C.. E.. Merritt* and *Mr. James Wilson,* for complainant..

*Mr.. J. W. Carmichael* and *Mr. Joel Parker,* for defendant..

THE CHANCELLOR.

On the 1st day of May, 1852, the widow and heirs-at-law of Nicholas Waln, deceased, conveyed to Emanuel Hodson

and Job Polhemus the complainant, in fee simple, for the consideration of $586.83, a tract of woodland in Ocean county, containing eighteen and ninety-three hundredths acres, or thereabouts. The deed was not recorded until the 19th of November, 1863. On the 21st of August, 1865, Hodson and Polhemus made a voluntary partition of the property between them, by deeds of that date. The deed to the former was recorded on the 28th of November, 1867, and the deed to the latter on the 25th of April, 1866. The partition seems to have been in every respect equal and just. Each received, in severalty, an equal portion of the land; each deed conveying ten acres and twelve-hundredths of an acre. There is no reason to doubt that the partition was, in all respects, fair. Indeed, its fairness and equality are not disputed or called in question. Each entered into possession of his several part immediately after, and pursuant to the partition. The complainant has enjoyed his accordingly, ever since, and Hodson, for aught that appears, has had possession of his also, up to the present time. He had such possession, at all events, up to the time of the sheriff's sale hereinafter mentioned. On the 21st of September, 1867, Hodson mortgaged his part to William W. Bullock, to secure the payment of $500 and interest, and subsequently, on the 6th of November, 1869, he sold the timber on it to certain persons residing in Trenton, for $1000. They cut off the timber and removed it. With part of the money received for it he paid off the Bullock mortgage.

On the 27th of March, 1861, the defendant, Ephraim P. Empson, recovered a judgment in the Court of Common Pleas of Ocean county against him for $1200 debt, (the real debt was $600,) besides costs. No execution was issued on this judgment until the 8th of August, 1871, when a writ of *fieri facias de bonis et terris* was issued, under which the sheriff sold and conveyed to Empson the interest of Hodson in the whole premises conveyed as above mentioned by the widow and heirs of Nicholas Waln, deceased, to Hodson and Polhemus.

Subsequently, Empson took proceedings under the act " for
the more easy partition of lands held by coparceners, joint
tenants and tenants in common," for the partition of the
premises between him and the complainant.   The complain-
ant filed the bill in this suit to restrain him from pro-
ceeding therein, and an injunction was granted and issued
accordingly.

The ground of the application for the injunction was, that
the defendant was bound by the partition by deed made
between Hodson and Polhemus; and further, that at the time
of the sale by Hodson of the timber on the premises set off
to him in severalty, the defendant was present, attending the
sale, and made no objection thereto, but permitted Hodson to
sell the timber and to take the proceeds of the sale for his own
use.   It appears that the defendant was present on the
premises at the time at which the sale was advertised to take
place, and he says in his answer that he attended for the pur-
pose of protecting his interest under his judgment.

The sale, however, was not made at public auction, as
Hodson had intended it should be, but was made in private
to some of the persons who attended with a view to pur-
chasing.

The principal question in this cause, and the one on which
its decision must depend, is, whether Empson is bound by
the voluntary partition made between Hodson and Polhemus.

Between the time when that partition was made (August
21st, 1865,) and the time of issuing execution on the judg-
ment, (August 8th, 1871,) nearly six years elapsed, and, in
the meantime, the mortgage to Bullock was made, and the
whole of the timber on the part assigned to and held by
Hodson in severalty, was cut off.   The timber constituted
nearly the entire value of the property, so that when the de-
fendant issued execution on his judgment, Hodson had
realized, in money, almost the entire value of his part of the
property, while Polhemus had possessed his part wholly, or
at least comparatively, intact.

Polhemus *v.* Empson.

Empson insists that as his judgment was a lien upon the undivided interest of Hodson in the whole tract, the lien was unaffected by the partition, because it was merely voluntary, and that, as to him, the partition is a nullity. Had it taken place by virtue of the decree of a court having jurisdiction, the lien of the judgment would, by force of the statute, (*Nix. Dig.* 669, § 14,) have been transferred to the share assigned to Hodson in severalty, and Polhemus would have held his share in severalty, free from the lien of the judgment. Hodson could have been compelled to submit to such partition. The defendant would not have been a proper party to the proceedings. *Low* v. *Holmes,* 2 *C. E. Green* 148. The partition, if made through judicial proceedings, would have bound the defendant. That method would have secured to him no advantage, however, which was not secured to him by the voluntary partition. If it be said that he would have had the assurance, because the partition was made through judicial proceedings, that it was just and equal, it may be replied that he does not question the justice and equality of that which has been made; and further, it appears, as already mentioned, to have been, in fact, in all respects fair. There is every reason why the court should favor and uphold voluntary partitions where they appear to have been just. If fraudulent or unfair, those who may be affected by the fraud or unfairness may, on due application, be relieved against it. This court would relieve such a one against a fraudulent partition made through the instrumentality of legal proceedings.

I see no good reason why a judgment creditor should not be bound by a fair and just voluntary partition, as well as by a partition made by virtue of legal proceedings. The fact that the parties to the partition may be compelled to partition by legal proceedings, is a sufficient ground for upholding such a voluntary partition as would have been made at law. "If an infant," says Lord Mansfield, in *Zouch* v. *Parsons, Burr.* 1794, 1801, "does a right act which he ought to do, which he was compellable to do, it shall bind him, as if he makes

equal partition." The question now under consideration has been passed upon in numerous cases, in respect to the effect of a voluntary partition, either on dower, mortgages or attachments in or upon interests in land, and it has been determined in those cases that the estate in dower or the lien of the mortgage or attachment is transferred to the land set off to the husband, mortgagor or debtor in severalty, and the rest of the land freed therefrom. *Lloyd* v. *Conover,* 1 *Dutcher* 47; *Jackson* v. *Price,* 10 *Johns.* 414, 417; *Potter* v. *Wheeler,* 13 *Mass.* 504; *Crosby* v. *Allyn,* 5 *Greenl.* 453; *Totten* v. *Stuyvesant,* 3 *Edw.* 500, 503; *Matthews* v. *Matthews,* 1 *Edw.* 565. In *Bavington* v. *Clarke,* 2 *Penrose & Watts* 124, the subject was considered with reference to the lien of a judgment; and it was held that the judgment creditor was bound by the partition. In *Manley* v. *Pettee,* 38 *Ill.* 128, where the subject is referred to, the inclination of the court was in favor of the doctrine.

But there are other considerations bearing on the determination of the question in this cause.

The defendant having acquired the interest of Hodson by purchase at sheriff's sale, is indeed entitled, under his purchase, to the estate which Hodson had in the land at the time of the recovery of his judgment, or at any time afterward; but he took it and holds it subject to the equities in favor of the complainant which had attached to the property in Hodson's hands when the sheriff's sale took place. *Osterman* v. *Baldwin,* 6 *Wall.* 116. Had there been no voluntary partition, and were Hodson the applicant for partition under the "act for the more easy partition of lands held by coparceners, joint tenants and tenants in common," this court would, under the circumstances, in view of the waste committed by him on part of the premises, stay his proceedings at law, in order that equity might be done between him and the complainant in the partition, and, to that end, the wasted part would be set off to his share. If the judgment debtor has committed waste of premises held by him and another person as tenants in common thereof, the purchaser at the sale of his interest in

the property under execution on a judgment against him, must, in equity, accept his position in respect to the partition; for partition in equity will be made on equitable terms and principles. *Brookfield* v. *Williams,* 1 *Green's Ch.* 341; *Doughaday* v. *Crowell,* 3 *Stockt.* 201; *Obert* v. *Obert,* 1 *Halst. Ch.* 397; *Hall* v. *Pidcock,* 6 *C. E. Green* 314; *Davidson* v. *Thompson,* 7 *C. E. Green* 83; *Barrell* v. *Barrell,* 10 *C. E. Green* 173.

Where partition is sought in the Prerogative Court or the Orphans Court, timber cut off, or waste or destruction committed by any owner after the death of the testator or intestate, and before the division, is to be charged to the account of the share of the person by whom the timber has been cut off, or the waste committed. *Nix. Dig.* 669, § 13. And so, on the other hand, if the judgment debtor had put improvements on part of the property, in the value of which improvements it would not be equitable that his co-tenant should participate, the purchaser under the sheriff's sale would have the benefit of the improvements awarded to him in the partition.

The fact that the defendant in this case asserted no claim under his judgment against the premises until six years after the time when the partition was made and Hodson had sold off all the timber from the land assigned to him in severalty, although the parties all lived in the county in which the land lies, is, under the circumstances of the case, sufficient ground for the injunction prayed against him. The bill prays that the partition may be confirmed. It will be so decreed, and that the sheriff's deed conveyed to Empson the part, and only the part, of the premises which, by the partition, had been assigned in severalty to Hodson, and the injunction will be made perpetual. The complainant is entitled to costs.