EPHRAIM P. EMSON, appellant,

and

JOB POLHEMUS, respondent.

1. A voluntary partition made by tenants in common, will not pre-
vail against the lien of a judgment against one of such co-tenants
rendered prior to such partition.

2. Such voluntary partition cannot be validated in equity against a
purchaser at the sheriff's sale under such judgment.

---

The respondent, Polhemus, and one Hodson were tenants
in common of a tract of woodland, of which they made a

voluntary partition, by deeds dated August 21st, 1865. These deeds were duly recorded. Before this parting of the property, the appellant, Emson, had recovered a judgment against Hodson, which became a lien on the premises in question; on which judgment, and long subsequent to the partition, that is, on the 8th of August, 1871, a writ of *fieri facias* was issued, and by force of which the sheriff sold and conveyed to Emson the undivided interest of Hodson in the tract. Having obtained a sheriff's deed, Emson took proceedings, under the act "For the more easy partition of lands held by coparceners, joint-tenants, and tenants in common," for the partition of the premises between himself and the respondent. The latter thereupon filed the bill in this suit to restrain such proceedings; on the final hearing this injunction was made perpetual.

The opinion of the chancellor is reported in 12 *C. E. Gr.* 190.

*Mr. Joel Parker*, for appellant.

*Mr. James Wilson*, for respondent.

THE CHIEF JUSTICE.

In order to affirm the decree in this case it is necessary to maintain the general proposition, that after a judgment has become a lien on the undivided share of a tenant in common in land, such tenant in common, in concert with those who share the estate with him, can make a voluntary partition that will, if fairly made, be valid with respect to the lien of such judgment.

I have carefully examined the cases which have been cited in support of the proposition thus stated, and I do not find that any of them can be regarded as a precedent in its favor. The nearest approach to adjudications upon the point are those holding that by force of a voluntary partition made by the husband, the right of dower of the wife will be contracted

to the parcel of land so set off to him. But these decisions rest, as it seems to me, on grounds peculiar to themselves. In this particular it is not easy to separate the interests of the husband and wife, they are so nearly identical. If the husband acquires by the partition an advantageous allotment, both he and his wife are equally gainers, and there is a parity of loss to each, if the share set off to the husband be less than his due. The right of the wife is inchoate and contingent, so that the husband cannot prejudice, either from his folly or his fraud, her interest, without, to a greater degree, sacrificing his own. It is not to be wondered at, therefore, that courts have maintained that the act of the husband, in taking to himself his share of undivided land, shall bind the wife so as to attach her dower exclusively to the part so taken. The right of partition is paramount to the right to dower; and when the husband settles the extent of his own right, there seems nothing inconsistent with principle or justice in permitting him to settle, by the same act, the extent of the right of his wife. The judgment, therefore, in *Totten* v. *Stuyvesant*, 3 *Edw. Ch.* 500, which maintains this doctrine, is, I think, founded on correct principles. But I also think that it was held with equal propriety, in *Bank* v. *Hanna*, 6 *Ind.* 20, that where a husband, being a co-tenant, conveyed his estate by a deed in which the wife did not join, and the grantee, with the other co-tenants, made a voluntary partition, such distribution of the land did not bind the wife after the death of her husband.

But the relation of debtor and creditor is not, in a matter of this kind, to be likened to that of husband and wife, for while the interests of the latter are concurrent, those of the former are adverse; and to give to the debtor the status of the husband in this respect, so that he can affect his creditors, would be both unscientific and impolitic.

A creditor by his judgment, and a mortgagee by his deed, gets a lien on an undivided interest in the land of his debtor, which gives him a fixed and immediate interest, and which is in all respects paramount, as far as it extends, to the right

of the debtor in the property. It is obviously undeniable that these lienholders will be materially affected by the allotment of the particular part of such property to which their lien is to be affixed by the law. If the ascertainment of such part be made by an appeal to the judicial power, such creditors have satisfactory guarantees that the division of the land will be fair and just; and hence the propriety of the provision of the statute of this state, that if, at the time of making partition, a lien exists "upon the undivided estate of any owner, by judgment, decree, mortgage or otherwise, such lien shall thereafter be a lien only on the share assigned or allotted to such owner." *Rev.* p. 804, § 36. And it should be remarked, in passing, that the presence in the statute of a direction of this kind, appears to intimate that an express statutory declaration was necessary to affect the claims of the lienholders, even by a judicial division of the land among the owners. And the question, therefore, is forcibly presented, why should this same force be imparted to the self-directed act of the debtor? In such case what assurance has the creditor that his rights will be adequately protected?

The general rule is, as was said in *Agar* v. *Fairfax*, 17 *Ves.* 543, that partition never affects the rights of third parties; and the more I have reflected on this subject, the less I have seen in favor of the proposal to affect the mortgagee or judgment creditor by the voluntary partition of the debtor. I can yield no force at all to the suggestion that "the fact that the parties to the partition may be compelled to partition by legal proceedings, is a sufficient ground for upholding such a voluntary partition as would have been made at law." Such a rule, and the reasoning that supports it, would validate a partition, if a fair one, which should be made by a single tenant in common as against his co-tenants. Nor can I perceive why, because an infant to a certain extent, and retaining a qualified power when of age of repudiating the act, may bind his own interest by joining in a partition, a tenant in common should be permitted by his act, not only to affect his own interest, but likewise the

Emson *v.* Polhemus.

interest of his non-assenting creditors.   The terms of these several propositions appear to my mind to have nothing in common, and consequently the legitimate deduction that may be made from the one is no warrant for drawing a similar conclusion from the other.

·  The principal argument, however, which is urged to uphold the power of the debtor to make a partition by his private action that will be obligatory on his creditor who holds a lien on the land is, that if the partition thus made is not fair, it can be set aside.   But this contention will, upon examination, be found to be destitute of all real force.   It substitutes a remedy for a wrong committed, in the place of a remedy against the commission of such wrong.   The safe- guard against an unfair separation of the rights of the co-tenants which in a judicial procedure is provided, is the substitution of the judgment of discreet and unprejudiced men, instead of the notions of the owners of the property. The proposed rule would take away from the creditor this safeguard, and in lieu of it place in his hands the cumber- some privilege of overhauling, if he can show unfairness, the act of the co-tenants.   All persons will see that by such substitution, the creditor is placed at disadvantage, and has, in reality, lost a valuable right.   The fact is, the creditor should have both rights, viz.: the right to a partition by unprejudiced persons, and the right to litigate an unfair partition, even if made by such persons.   But the contention in question deprives him of the former of such rights, and gives him no equivalent.

There is a further objection of magnitude.   The rule proposed would leave the lienholder subject to the caprice or folly of his debtor in the act of agreeing to partition. When a tenant in common is competent to contract, his agreements with his co-tenants respecting the partition of his land are as binding upon him as are his contracts on any other subject.   In the absence of fraud, an unequal partition assented to by such tenant is not, in legal estimation, an unfair one that will be set aside.   If, by the exercise of a

superior judgment, certain of the tenants in common gain an advantage, the proceeding, on that account, is not invalid. "If coparceners, joint-tenants, or tenants in common, seized in fee simple, make partition, it is good forever, though the value of the different shares taken in severalty be unequal." Such is the rule as propounded by *Allnatt*, p. 30. The consequence is, that the lienholder, if the rule contended for is to prevail, will, in place of the discretion of men selected judicially, be thrown on the judgment of the debtor, and will be bound by the exercise of such judgment, in the absence of actual fraud, whether such debtor be a frivolous person or a man of sense. In the absence of controlling authority it is not perceived why the judgment creditor should be placed in a position so unfavorable.

There are many other objections which, on reflection, will present themselves. A partition would often be of a kind which, while it would be perfectly fair and just between the parties, and which, therefore, could not consistently with established rules be set aside, yet would be quite ruinous to the interests of the creditor. For example, in a case where the co-tenants agree to divide between themselves the rooms of a house : such distribution is entirely legal, and if the power to make a voluntary partition exists at all, could not be impeached ; and yet such an interest, regarded as a saleable article under an execution, might be of little value. Conceding to the judgment debtor the capacity to make voluntary partition, what is to be done with arrangements of this nature? It is obvious they would be valid in law, and they would have to be sustained against the judgment creditor or mortgagee.

So, I think, this power of partition, if it existed, would often be turned to purposes of fraud and vexation. Suppose a creditor has advertised for sale, by force of his judgment and execution, the undivided interest of his debtor in certain lands, and on the eve of such sale he should ascertain that his debtor has made a division of such lands with the co-tenants, which he deems unfair—what is his remedy?

Emson *v.* Polhemus.

Certainly a most oppressive and inefficient one. All that he could do would be to stop his proceedings under his execution, and file his bill in equity to test the fairness of such partition. All persons can see that such a remedy would not often be resorted to unless where the unfairness was very gross and the consequent loss to the creditor of magnitude. By such a practice ordinary frauds could be perpetrated with absolute impunity. I have little doubt that if it were known that debtors have the power which is claimed by the respondents, that these partitions, unfair upon their very face, would oftentimes be made in order to procure a virtual stay of execution, by driving creditors, who were about selling under their judgments, into a court of equity to obtain a redivision of the property before exposing it for sale.

All these evils and iniquities will be avoided by holding that the debtor, after mortgage or judgment, cannot make a voluntary partition which will bind such lienholders. Such a doctrine imposes no hardship on the debtor and his co-tenants. If they desire a separation of their interests they can pursue the legal formulary; that method is simple, expeditious and inexpensive, and by its use the interest of all parties, those of mortgagees and judgment creditors, will be protected.

It seems to me of importance to establish this as the legal course of practice in this state; and I shall, consequently, vote to reverse the decree in the present case.

For reversal—BEASLEY, C. J., DALRIMPLE, DEPUE, SCUDDER, VAN SYCKEL, WOODHULL, LATHROP—7.

For affirmance—DIXON, KNAPP, CLEMENT, LILLY—4.