MATTHEWS *vs.* MATTHEWS and others.

The wife of a husband tenant in common is not a necessary party to a suit for partition. Such suit cannot take away her right to dower. On a partition such right attaches to the husband's severalty-share; and, if a sale is decreed, the lands should be sold subject to it : unless she will voluntarily release. The master's deed will not carry it.

No act of the husband's, without the wife's consent or misconduct, can bar her dower.

A decree for partition or sale of the real estate will not be granted amongst heirs, while the personal property appears to be insufficient to pay the debts of the ancestor.

It is not the business of equity to undertake the administration of estates in the first instance, nor to take the administration out of the hands of persons duly appointed and who are in no default.

A bill for partition. It was filed by Edward C. Matthews, as one of the children of James Matthews, deceased, intestate, against his brothers John R. Matthews, James R. Matthews, William A. Matthews and Francis H. Matthews. A part of the estate embraced by the bill was situated at Brooklyn and the rest of it in the city of New York. Three of the defendants, namely, James, William and Francis were minors.

*February 19, 1833.*

*Partition.
Wife's rights.
Parties.
Administrator
and heirs.*

The bill was filed about twenty days after the death of the father.

One of the defendants, John R. Matthews, had been duly appointed administrator of the estate and effects of his said father prior to his putting in an answer. And he therein stated the fact of his being such administrator; and alleged the insufficiency of the personal estate to pay the debts of the deceased, and which debts included an amount of five thousand dollars secured by a mortgage on part of the real estate. He supposed the personalty to be worth sixteen thousand six hun-

dred and forty-three dollars, while the debts, (and which were due) were eighteen thousand dollars.   An amount of five thousand dollars, mortgage debt due the estate, did not become payable until the year one thousand eight hundred and thirty-six. The answer concluded thus : " And this defendant further saith, " that in the uncertainty whether the said goods, chattles and " credits or personal estate will produce as much as the amount " estimated as aforesaid and inasmuch as the said estimated " amount is considerably less than the amount of the said debts " and more especially as there may be debts due by the said " James Matthews, deceased, of which this defendant has no " knowledge, the partition prayed by the said bill ought not to " be made or decreed without making provision for the pay- " ment of any debts of the said James Matthews, deceased, " which there may be no personal assets to pay.   And this de- " fendant prays the benefit of the said objection in like manner " and to the same extent as though he had pleaded the same " and insisted on the insufficiency of the personal estate of the " said James Matthews, deceased, for the payment of all his " debts in that mode in bar of the said complainant's bill and " that he may be protected from all liability and responsibility " in the premises in regard of the said debts."

The rights of the infant defendants were submitted by their guardians *ad litem.*

By the master's report (and to whom the cause had been referred in the usual manner) it appeared, that the property at Brooklyn would require to be sold, but the New York estate, consisting of five lots of ground with the buildings thereon, and which were of nearly equal value, could be partitioned ; and that upon one of them was a mortgage of five thousand dollars. The master reported there was no other general lien upon the property nor any specific one upon an undivided share.

The cause was now brought to a hearing upon bill, answer and master's report.

Edward C. Matthews, the complainant, had married after the filing of the bill ; and an objection was raised on account of his wife not having been made a party to the suit.

Mr. *William S. Sears*, appeared for the complainant.

*1833.*

*MATTHEWS*
*v.*
*MATTHEWS.*

Mr. *Charles F. Grim* for the defendants John R. Matthews and others.

THE VICE-CHANCELLOR. The fact of the complainant's having taken a wife since the filing of the bill, has been admitted; and an objection was urged at the former hearing, that she ought to have been made a party before any decree could be had. I then expressed an opinion, which I have since found no reason to alter: that the wife of a husband tenant in common is not a necessary party to a suit for partition. If an actual partition should be made, her right of dower will attach to the share allotted in severalty to her husband. This results as a matter of course, without any decree or order of the court; and, consequently, without her being before the court as a party.

*July,* 1.

In cases were the husband is a tenant in common in his own right and a sale, instead of an actual partition, becomes necessary, it is immaterial whether the wife is or is not joined in the suit: because, a decree for sale and conveyance by a master will not bar her right of dower in her husband's share of the lands in the event of her surviving him.

There is nothing in the statute (regulating proceedings in partition) expressly declaring a divestment of the dower initiate of a wife of a joint tenant or tenant in common upon a sale; and nothing, so materially affecting her legal rights, ought to be taken by implication. This statute provides for the case of any tenant in dower or by the courtesy or for life having an existing estate in the whole or any share of the premises at the time of the order of sale; and the holder or owner will receive either a gross sum out of the proceeds in lieu of it or the benefit of a just proportion put out at interest: 2. *R. S.* 325. §. 50. 51. 52. 53. 54. 55. But this provision does not apply to *femes covert* having an inchoate right of dower; which is a mere possibility and not an estate within the contemplation of the statute. It is true the 61§. is broad in its terms where it speaks

of conveyances being a bar both in law and equity against all persons " interested" in the premises in any way who shall have been named as parties in the proceedings; but still this must be construed with reference to the description of persons and the nature of the estates or interest mentioned in the preceding sections—and I think the legislature could not have intended, by those expressions, to bar a wife of her right to dower in the lands thus sold, although her husband may have caused her to be named in the proceedings with him. No act of his, without her consent, can deprive her of the right. She may forfeit her dower by adultery. She may elect to take a jointure or other provision by will in lieu of it. And she is at liberty to unite with him in a release or conveyance which, if duly acknowledged, will pass it to a purchaser. I know of no other means by which she can bar herself or be debarred of this right.

I am aware of expressions used by Chancellor Walworth in the case of *Wilkinson* v. *Parish*, 3. *Paige's C. R.* 653. from which an inference might be drawn, that it is only necessary the wife should be a party to a suit for partition in order to bind her by the decree of sale and pass a clear title to the purchaser. I am, nevertheless, convinced he did not intend so to decide and that his observations are not to be thus understood. His attention was not there directed to this point.

The only safe course, in my opinion, where a sale in partition becomes necessary, is, for the wife to unite with her husband in a release to the purchaser, even where she is made a party to the suit; and if she will not consent to execute such release, then to have his share sold, subject to the contingency of her dower.

The next point, whether a deficiency of personal estate to pay the debts of the ancestor forms any objection to a bill for partition between the heirs at law of the real estate ? and if so, to what extent ? is also deserving of serious consideration.

The legal remedy of creditors against the heirs at law of the debtor, whether upon simple contract or specialty, is abolished by the Revised Statutes. They can only be prosecuted joint-

ly in a court of equity : 2. *R. S.* 454. §. 42 ; and even the remedy by bill in this court cannot be pursued until after the expiration of three years from the time of granting administration upon the estate of the debtor : *Ib.* 109. §. 53. The reason for this delay or suspension is this : that the administrator may proceed in the mean time before the surrogate and obtain authority to mortgage or lease the lands or, if necessary, sell them for the purpose of raising money to pay the debts which the personal estate is insufficient to discharge. If the administrator neglects to apply to the surrogate for this purpose, any creditor may make the application and the proceedings will go on as if he had. Ample directions are given to render all this effectual. Lands which descend and those which are devised will become, in this way, subjected to the payment of even the simple contract debts of the ancestor or devisor. It is a power which the personal representative may exercise over the real estate in the event of a deficiency of personal assets to pay the debts ; and the heir or devisee takes the lands subject to such power. I do not perceive the statute has any where declared, in terms, that the debts become a lien upon the lands. If a lien in law existed in such cases, there would be no difficulty in a proceeding by partition, because the amount of it would be ascertained upon the usual reference and the debts be paid out of the proceeds of sale. Instead of a lien, the statute in relation to the liability of heirs and devisees and the remedies against them, seems to contemplate a personal liability only in virtue of the lands descended or devised, subject always to the before mentioned power of the administrator or executor ; yet, it is true, such personal liability is not to be enforced unless it is made to appear that the assets which have come to the hands of the executor or administrator are insufficient to discharge the debts, &c. *Ib.* 452. § 32, 33, and *Ib.* 455. § 56. And to show still clearer, that no lien exists in such cases, the present law, like the former, speaks of an alienation by the heir or devisee before suit brought, and, in reference to such a case, declares he shall be " personally liable" for the value, but, if aliened in good faith,

1832.

MATTHEWS
*v.*
MATTHEWS.

72

the lands are not to be liable to execution nor affected by a decree against the heir or devisee : *Ib.* 454, 456, § 49, 51, and 61.

I confess there appears to be some incongruity in these several provisions of the statutes ; and if they were to be followed in their literal import and to have effect accordingly, great injustice would sometimes be done to creditors. In the first place, their remedy against heirs and devisees personally is suspended for a given time, during which the lands can only be reached, for the payment of debts, through a surrogate's order ; and, frequently there will and necessarily must be considerable delay before such a proceeding can be commenced. In the second place, there is no positive restraint upon alienation by the heir or devisee until it can be ascertained whether the lands may not be required for the payment of debts. There is no express provision about it in the statutes. Ordinary debts are not declared to be a charge or lien upon the lands. The heir seems, therefore, at liberty to sell and capable of giving an unincumbered title to a purchaser. Should he effect a sale, receive the purchase money, and, before the expiration of the three years, become insolvent, and it should then be ascertained that the personal estate was insufficient to pay the debts of the ancestor, the creditors could only look to the personal responsibility of an insolvent heir. The injustice of such a result is so manifest, that I think the legislature could not have intended, while they entirely abolished suits at law against heirs for the debts of their ancestor and postponed to a period of at least three years the substituted remedy by a bill in this court, to give a liberty to them, in the mean time, to make an absolute sale and conveyance of the lands, either by an act in *pais* or where they hold in common, by resorting to a partition and sale here and thus deprive the creditors of their only real security. On the contrary, we must presume the legislature supposed they were effectually guarding creditors against an event, which might be so injurious to them by subjecting the real estate, in the manner they have done, to the jurisdiction and authority of surrogates and to the power of executors

and administrators; and that they also intended, whenever such power should be exercised and a sale become necessary under the authority of the surrogate, to make it overreach and supersede any sale made or procured by the heir or devisee within the three years; and also considered such sales as not made in good faith while debts of the ancestor remained and a possibility existed of a deficiency of personal assets.

I am of opinion the courts are bound so to consider this provision of the statute. It will prevent a mischief which might otherwise ensue. The construction which I have here proposed to adopt, is the only one to render the present law consistent and agreeable to the intention of the legislature. Intention, when ascertained, is to prevail: *Dwarris on Statutes*, 690.

Entertaining these views of the law and considering a sale of the real estate, as between the heirs, to be premature while the personal estate appears to be insufficient for the debts, I can make no decree, at present, for such a purpose.

This court ought not to direct or sanction a sale, unless the parties, supposing them competent to act for themselves, would have a perfect right to make it. It has been said, the proceeds, upon such a sale as is prayed for, might be brought into court and be here distributed amongst the creditors, if it should be found necessary. But, in answer to this it may be said, that it is not the business of a court of equity to undertake the administration of estates in the first instance or to take the administration out of the hands of persons duly appointed and who may be in no default. I shall leave the parties to pursue some other proper and legal course, so far as a sale is concerned.

In regard to that part of the real estate, mentioned in the master's report, which is susceptible of actual partition, I should see no objection to a decree, provided it would be effectual. The mortgage upon one of the lots and the inability of the administrator to pay it off, until he can sell some of the real estate at Brooklyn for the purpose of discharging it with other debts, would render the decree ineffectual. The complainants will find it advisable, probably, to suspend the entry of any de-

cree until the administrator can determine how far it will be necessary for him to proceed before the surrogate against the real estate ; and, in the mean time, this bill can be retained, with leave to the complainant to move at a time when it will be more proper to make a decree embracing all the real estate not required for the payment of debts.