Jewett *v.* Keenholts.

16   193
122a 489

## Jewett *vs.* Keenholts.

The mere existence of a debt, creates no lien upon land, while the debtor lives; but upon his death, the character of the debt is changed by the operation of the statute authorizing a sale of the real estate, for the payment of debts, on the application of creditors at any time within three years. The debt becomes, at once, a lien upon the land, so that the land descends to the heir, or passes to the devisee, chargeable with the payment of the debts of the ancestor.

And whoever sows a crop upon land in the possession of an heir or devisee,

during the three years within which the real estate of the devisor or ances-
tor is liable to be sold by the order of the surrogate, for the payment of his
debts, does so at the risk of losing his crop, in case of a sale before he can
remove the same.

When land of which a debtor died seised is thus sold, under the order of a
surrogate, the purchaser is entitled to the growing crop.

THIS was an appeal from a judgment entered upon the re-
port of a referee. The action was brought for entering the
plaintiff's premises, and cutting and carrying away a quantity
of rye. It appeared upon the trial, that Simon Grote died, in
September, 1848, seised of a valuable farm, and possessed of
personal property to a very small amount ; that he left a will,
by which, after directing the payment of his debts, he devised
his farm to his son Henry Grote. The will was proved in Feb-
ruary, 1849, and Abraham Grote, another son of the testator,
was appointed administrator with the will annexed. Henry
Grote as devisee of the farm took possession, in June, 1849.
The testator, at the time of his death, owed debts, exceeding in
amount three thousand dollars, and on the 2d of July, 1849, the
administrator, in due form of law, made application to the sur-
rogate of Albany for leave to mortgage, lease or sell the farm to
pay the debts. The usual order to show cause was made by the
surrogate, and, on the 15th of August, 1849, an order was made
directing the sale of the farm, and, on the 27th of October, the
farm was sold at auction for the sum of $3100, and the plaintiff
became the purchaser. On the 27th of November, 1849, the
sale was confirmed and the administrator executed a deed to the
plaintiff. The plaintiff subsequently took possession of the farm,
the crop of rye in question being then growing thereon. The
rye had been sown by the defendant, under a verbal agreement
between him and Henry Grote, whereby the defendant was to
sow, cut, bind and shock the crop, upon shares, giving Grote one
half, and that he should have a claim on Grote's half for half the
seed sown, of which each was to furnish half, but the defendant
furnished the whole. The rye having matured in the summer
of 1850, and the plaintiff having forbidden the defendant to take
the rye, the defendant went upon the farm and harvested the

crop, and for that purpose opened a way through the plaintiff's stone wall, the gate being locked. The defendant, after dividing the crop by taking every other shock, took 700 sheaves from the remaining half, which yielded *eleven* bushels more than the defendant was entitled to receive for the half of the seed he had furnished. Upon these facts, the referee reported in favor of the defendant. The plaintiff appealed from the judgment.

*R. W. Peckham*, for the plaintiff.

*H. G. Wheeler*, for the defendant.

*By the Court,* HARRIS, J. Simple contract debts, by the common law, are not recoverable in any shape out of the land of a deceased debtor; but the laws of this state make the real estate of the debtor a fund for the payment of debts, on a deficiency of personal assets. Upon application to the surrogate, at any time within three years, and showing that the personal estate is insufficient to pay the debts of the decedent, that officer is authorized to direct a sale of real estate, and that the avails be applied in satisfaction of debts. Such an order may be made, whether the land is in the hands of the heir, or devisee, or a purchaser from such heir or devisee. Whoever takes the land, within the period limited by statute, takes it subject to this contingency. "This liability," says Mr. Justice Barculo, in *Hyde* v. *Tanner*, (1 *Barb. S. C. Rep.* 75,) "is a kind of statutory lien running with the land, during the three years." After the expiration of that period, the heirs or devisees may sell, and a *bona fide* purchaser will take the estate free and discharged from the debts. (*See also Matthews* v. *Matthews*, 1 *Edw. Ch.* 571.)

The mere existence of a debt, creates no lien upon land while the debtor lives; but, upon his death, the character of the debt, by the operation of the statute, is changed. It, at once, becomes a lien upon the real estate of which he died seised, so that it descends to the heir, or passes to the devisee, chargeable with the payment of the debts of the ancestor. "The heir," says McLean J. in *Watkins* v. *Holman*, (16 *Peters*, 63,) "cannot·

alien the land to the prejudice of creditors. In fact, and in law, he has no right to the real estate of his ancestor, except that of possession, until the creditors shall be paid." The legislature has provided the creditor, upon the death of his debtor owning real estate, with a lien not unlike that of a mortgage, or a judgment properly docketed. The mode of enforcing the lien differs in each of the three cases, but in all, the property is bound until the debt is satisfied.

It seems to be well settled that upon the foreclosure of a mortgage, the purchaser, who, of course, takes such title as the mortgagor had when he executed the mortgage, is entitled to the growing crops or emblements. And that too as against a lessee of the mortgagor or any other person holding under him. This was held upon full consideration in *Lane* v. *King*, (8 *Wend.* 584,) and the decision was relied upon as authority by the chancellor, in *Aldrich* v. *Reynolds*, (1 *Barb. Ch. Rep.* 613.) "It appears to be in accordance," says the chancellor, "with the principle that where the determination of the estate depends upon the voluntary act of the owner, or where the estate is defeasible by a right paramount, or by a forfeiture, or a breach of condition depending on his own act or omission, he who has the paramount right, or who enters for the forfeiture or breach of condition, is entitled to the emblements." In *Shepard* v. *Philbrick*, (2 *Denio*, 174,) it was held that a purchaser, upon the foreclosure of a mortgage, was entitled to a crop growing upon the land at the time of the sale, and which having been sown by the mortgagor, had been sold upon an execution against him. (*See also Gillett* v. *Balcom*, 6 *Barb.* 370.) "There is a distinction," says Powell, "between tenants who have particular estates that are uncertain, defeasible by the act of the parties, or the act of God, and those who have particular estates uncertain, defeasible by right *paramount*, for, in the latter case, he that hath the right *paramount* shall have the emblements. As against the mortgagor and his grantees or tenants, the mortgagee undoubtedly has the *paramount right.*" (*See Powell on Mortgages*, cited in *Lane* v. *King*, *supra.*) In respect to a sale upon execution, the question as to the right of the purchaser

to take the emblements, is not likely to arise in this state, inasmuch as the purchaser must wait fifteen months before he can have possession. But in Pennsylvania, where the purchaser is entitled to immediate possession, the question has arisen and has been decided in conformity with the rule which governs upon the foreclosure of a mortgage. In *Sallade* v. *James,* (6 *Barr,* 144,) a judgment debtor, after the recovery of a judgment against him, and after execution had been issued and levied upon his land, leased the land to a tenant for two years and received the first year's rent in advance. After the tenant had sowed a crop, the land was sold, and the tenant, upon notice, left the premises. Subsequently he went upon the land and cut and removed the grain. For this, an action was brought. It was held, that a tenant has a right to enter for the waygoing crop, *only* where he had an *indefeasible right to sow it ;* and, though a judgment creditor has not a present estate in the land, he has an interest in it, which may presently be turned into one, and a lessee, knowing the fact, and taking his chance of the event, may be supposed to have framed his contracts so as to meet it.

If, then, a tenant who sows a crop upon land encumbered by mortgage or judgment, takes the risk of losing it, in case of a sale under the incumbrance, before he can remove his crop, I cannot see why a tenant, occupying land under an heir or devisee, does not take the same hazard in respect to the statutory lien of the ancestor's debts. The order of the surrogate, and the sale by virtue of that order, are but the execution of the lien ; the foreclosure of the mortgage. If the testator had, on the day he died, executed a mortgage upon his farm to secure his creditors, and then died, devising the farm to his son, subject to the mortgage ; it cannot be denied that, upon the foreclosure of such a mortgage, the purchaser would have taken the crop in question, even as against the defendant. I cannot distinguish, in principle, the sale under the surrogate's order, from the foreclosure of such a mortgage. In either case, the lien existed when the tenant entered. Then, as now, he would have known the condition of the property, and would have acted with his eyes open. He would be presumed to have been willing to take

the chance of securing his crop before the lien could be enforced. The defendant, in this case, was aware that he would run just this hazard. It appears that, before he sowed, and even before he made his agreement with the devisee, he inquired of Mr. Crounse, who had been the committee of the estate and person of the testator, if there would be any danger of his not being permitted to reap the grain if he should sow it; and was advised to take counsel upon the subject. He was further told that the estate was greatly indebted, and that there was no other way to pay the debts but by a sale of the farm. Indeed, the order for the sale had actually been made, and, probably, the sale was already advertised when the rye was sown. Under these circumstances, the defendant took the risk of the adventure. He knew he might lose the fruit of his labor, if the sale should be perfected before he could harvest, and if it should be decided, as it seems he was apprehensive it might, that the purchaser, in that event, would be entitled to the crop.

Upon the facts found by the referee I think the plaintiff was entitled to recover. The judgment should, therefore, be reversed, and a new trial awarded.

[ALBANY GENERAL TERM, February 7, 1853. *Watson, Parker* and *Harris*, Justices.]