In the Matter of the Judicial Settlement of the Account of
Proceedings of THOMAS F. DOYLE, as Administrator, etc.,
of MAX RECHNITZER, Deceased.

EDWARD F. COLE, Petitioning Creditor, Appellant; DOLLAR
SAVINGS BANK and Others, Respondents.

First Department, December 7, 1917.

Decedent's estate — sale of real property to pay debts of decedent —
statutes construed — provisions requiring sale are mandatory —
conveyance by heirs transfers title subject to payment of debts
where administration granted within two years of decedent's
death — priority of liens — subsequent improvements by grantees.

The provisions of the Code of Civil Procedure relating to the sale of the
real property of a decedent for the purpose of paying his debts are
mandatory and the surrogate in a proper case is bound to render a decree
that the lands be sold and he cannot refuse such decree under the equitable
jurisdiction conferred by section 2510 of the Code of Civil Procedure.

All general phrases in a statute yield to a particular specification contained
in the same statute; hence the general equitable power must yield to the
statutory restriction upon it, or directions as to it, and where the statute
prescribes when and how the surrogate shall act, he cannot act other-
wise than is prescribed.

Where the heirs of an intestate conveyed lands inherited by them, subject
to existing incumbrances, shortly after the intestate's death and letters
of administration on his estate were subsequently issued within two years
of his death, a creditor who subsequently obtained a deficiency judgment
against the estate on the foreclosure of a mortgage executed by the intestate
on other lands is entitled to a decree that the lands conveyed be sold
to pay the debt of the intestate upon showing that there is no personal
property of the estate out of which the judgment can be satisfied.

Said creditor is entitled to have his debt satisfied out of the proceeds of the
sale of the land in priority to subsequent claims of mortgagees and to the
claim of a subsequent owner for the value of improvement of the land by
the erection of a building thereon.

However, liens upon the land which existed at the time of the decedent's
death are entitled to priority as against the judgment creditor; but the
lien for moneys advanced for subsequent improvements, or the value of
the improvements, are not entitled to priority, as the grantees took the
property, advanced the money and constructed the building subject to
the liens of the creditors of the deceased.

The fact that the sale, owing to incumbrances on the land, will bring but a
small amount of money to·the estate, is no ground for refusing a decree
that the land be sold.

APPEAL by the petitioning creditor, Edward F. Cole, from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 17th day of March, 1917, judicially settling the account of the administrator herein and denying the appellant's petition for the sale of the real estate owned by the intestate at the time of his death for the payment of his debts.

*William F. Wund*, for the petitioning creditor, appellant.

*Philip S. Dean*, for the respondents, Dollar Savings Bank and others.

*William W. Hoppin*, for the respondents Louisa Merritt (the second) and Grace Meeker, infants.

PAGE, J.:

The facts were stipulated before the surrogate, and the only oral evidence that was received was the testimony of experts as to the value of the real estate.

Max Rechnitzer died intestate in the county of New York on March 10, 1912. Letters of administration were duly granted on December 16, 1913, upon a petition presented within two years after decedent's death. The decedent prior to his death was seized of two parcels of real estate, one of which was held by the decedent and his wife as tenants by the entirety, and was incumbered by a mortgage executed by himself and wife to secure the payment of their joint and several bond for the sum of $13,500, which bond and mortgage were duly assigned to the appellant on June 17, 1913, for the full consideration of $13,500. In January, 1914, the appellant commenced an action to foreclose this mortgage in the Supreme Court, New York county. The administrator and the decedent's widow were made parties defendant and personally served with process. This action resulted in a judgment of foreclosure and sale, upon which a sale was had and a deficiency judgment entered for $3,807.03. An execution was thereafter issued against the property of the widow of decedent and returned wholly unsatisfied.

Of the other parcel decedent was seized in his own right. On May 10, 1912, two months after the decedent's death,

his heirs conveyed this parcel, which was vacant land, to one Otto Kronmuller. The property was incumbered by mortgages, taxes and other liens amounting in all to $6,444.58, and was conveyed subject to these incumbrances. Kronmuller paid the heirs the sum of $55.42 as a consideration for the conveyance. The next day Kronmuller conveyed the property, subject to said liens, to the Hillcrest Building Company, which on June 5, 1912, procured a mortgage of $7,000 from one Faulhaber, and also procured a building loan agreement and mortgage from the City Mortgage Company, which assigned the same on August 7, 1912, to the New York Trust Company, which then advanced the total sum of $41,000. On or before the 16th day of August, 1912, the liens of $6,444.58 were paid out of this loan and the remainder, together with the $7,000 advanced by Faulhaber, was used in the erection of a building on the property, which building enhanced the value of the land to the extent of $45,000. By mesne assignments the mortgage of $41,000, on November 27, 1912, became vested in the Dollar Savings Bank. All of these transactions were within eight months after the decedent's death. On April 29, 1915, within eighteen months after the issuance of the letters of administration, the administrator filed his account, together with a petition for a judicial settlement thereof. The account filed showed that no personal property whatever had come into his hands; no money disbursed, except premiums on his bond and no creditors except appellant whose proof of claim with a transcript of judgment was annexed to the account. The appellant, who was a party to the accounting proceeding, filed his petition therein, alleging his status as a judgment creditor, the other jurisdictional facts, the names of the parties interested, that the administrator's account as filed showed no personal estate, and also alleging that decedent left no personal estate out of which his debts or expenses of administration could be paid. It is also alleged that decedent was the owner at the time of his death of the said real estate conveyed by his heirs as above set forth, and prayed that said real estate be sold for the payment of decedent's debts and the expenses of administration. Citations were duly issued and served on all the necessary parties. The administrator, his surety, the several mortgagees and the

then owner of the property appeared, and the mortgagees and owner filed answer and contested the appellant's application. None of the heirs or next of kin appeared, nor did any other creditor of the deceased appear and file any claim; in fact it was stipulated that there were no others. The answer of the owners and the mortgagees affirmatively alleged the various conveyances, the payment of the liens on said property, the execution of the mortgages and the erection of the building as hereinbefore set forth; and alleged that all of the transactions were made in good faith and without actual or constructive notice of appellant's claim. The answer of the owner prays that if the sale be made, he be first paid the amount of the mortgages, assessments and tax liens which were on said premises at the time of the conveyance thereof by the heirs, and that he also be paid the value of the improvements on said premises made by his predecessor in title and himself, as entitled thereto by right of subrogation. The Dollar Savings Bank prays that it be decreed that its mortgage is a valid and subsisting lien on the premises and clear of any claim of the petitioner, and if a sale be made that it be first paid the amount of its mortgage. Faulhaber also prays for similar relief as to his mortgage. In addition to the facts above set forth, it was stipulated that no part of appellant's judgment had been paid, and that the sum of $3,807.03, with interest from May 20, 1914, is still due thereon; that Clementine Rechnitzer, decedent's widow, had no property out of which appellant's judgment could be paid; that the decedent died seized of no other real estate than that petitioned to be sold; that subject to any order that might be made in this proceeding no one else beside the owner and the said mortgagees had any interest therein, lien or claim on said premises at the time of this proceeding. Evidence was given by experts that the value of the property at the time of decedent's death was about $7,000.

From the foregoing facts it would appear that every requisite existed to give jurisdiction to the Surrogate's Court, and that it was a proper case to make a decree for the sale of this property for the purpose of paying debts and costs of administration. (Code Civ. Proc. §§ 2702, 2703, 2705,

2706.) The law was, therefore, mandatory that the surrogate should make the decree. Section 2707 provides that if it shall appear that it is a proper case for the disposition of the decedent's real estate, as provided in this title (which limits the propriety of the case to the provision of the statute and not to the discretion of the surrogate), " the surrogate shall make an order * * * directing the * * * administrator to * * * sell the whole or such part of the real property * * * as the surrogate therein directs.' The surrogate wrote no opinion nor does his decision disclose his reasons for denying the appellant's petition. The counsel for respondent strives to justify it on two theories: *First*, that the equity in the property at the time of the decedent's death was of such small value that a sale would have been a vain thing. It is a sufficient answer to this contention that the statute does not make the value of the property a matter for the consideration of the surrogate. The sole questions before him are, was there sufficient personal property to satisfy the decedent's debts? If not, did he die seized of real estate, and have the proceedings all been taken within the time and in compliance with the requirements of the statute? It it shall appear from the sale that the property had no value over and above the liens thereon, the creditor may have pursued a fruitless proceeding. If it shall produce something on the sale over and above the incumbrances, he is entitled to receive it. No power is given to the surrogate to prophesy as to the outcome and base his decision thereon. *Second*, that the Surrogate's Court now has all the powers of a court of equity in the trial and determination of all questions arising between any or all of the parties to any proceeding in his court. (Code Civ. Proc. § 2510.) This section establishes the general jurisdiction of the Surrogate's Court, and in the exercise of this jurisdiction the power just mentioned is given, but there is a further provision that this power is to be exercised " in the cases and in the manner prescribed by statute." Subdivision 5 of said section gives the power to direct the disposition of real property and interests in real property of decedents, and the disposition of the proceeds thereof. But the statute further specifically provides the manner in which this power shall

be exercised. (§§ 2701–2714.) All general phrases in a statute yield to a particular specification contained in the same statute, hence the general equitable power must yield to the statutory restriction upon it or directions as to it, and where the statute prescribes when and how the surrogate shall act, he cannot act otherwise than is prescribed. (*Matter of Holzworth,* 166 App. Div. 150, 154; affd., 215 N. Y. 700.)

Section 2714 expressly provides: " A conveyance of real property, made pursuant to this title, does not affect, in any way, the title of a purchaser or mortgagee, in good faith and for value, from an heir or devisee of the decedent, unless letters testamentary or letters of administration, upon the estate of the decedent, were granted, by a Surrogate's Court having jurisdiction to grant them, upon a petition therefor, · presented within two years after his death," thus establishing that where such letters are granted upon a petition presented within two years after his death, the conveyance is good as against purchasers in good faith and for value. Such was the construction given to prior statutes.

In *Hyde* v. *Tanner* (1 Barb. 75, 80) the court said: " It is not intended to be said that the heirs or devisees may not alien prior to the expiration of the three years. They may sell and convey at any time after the death of the testator or intestate. But if they convey before the expiration of that period, the lands pass subject to the power of the surrogate to direct the same to be sold for the payment of debts. And in case the exercise of that power becomes necessary, by reason of a want of personal assets, the title made under the surrogate's sale will be paramount to all titles made by or through the heirs or devisees, and will convey the estate precisely as it was left by the decedent."

In *Jewett* v. *Keenholts* (16 Barb. 193), in a proceeding to sell a decedent's real estate for the payment of his debts, it was held that the purchaser was entitled to a crop of grain which had been sown after the decedent's death under an agreement by a third party with the devisee to plant and grow the same on shares. The court said (p. 195): " Upon application to the surrogate, at any time within three years, and showing that the personal estate is insufficient to pay the debts of the decedent, that officer is authorized to direct a

sale of real estate, and that the avails be applied in satisfaction of debts. Such an order may be made, whether the land is in the hands of the heir, or devisee, or a purchaser from such heir or devisee. Whoever takes the land, within the period limited by statute, takes it subject to this contingency. * * * After the expiration of that period, the heirs or devisees may sell, and a *bona fide* purchaser will take the estate free and discharged from the debts. * * * The mere existence of the debt creates no lien upon land while the debtor lives; but upon his death, the character of the debt, by the operation of the statute, is changed. It at once becomes a lien upon the real estate of which he died seized, so that it descends to the heir or passes to the devisee, chargeable with the payment of the debts of the ancestor. ' The heir,' says McLEAN, J., in *Watkins* v. *Holman* (16 Peters, 65) ' cannot alien the land to the prejudice of creditors. In fact and in law, he has no right to the real estate of his ancestor, except that of possession, until the creditor shall be paid.' The Legislature has provided the creditor, upon the death of his debtor owning real estate, with a lien not unlike that of a mortgage, or a judgment properly docketed. The mode of enforcing the lien differs in each of the three cases, but in all, the property is bound until the debt is satisfied."

In *Platt* v. *Platt* (105 N. Y. 488, 497) the court said: " The debts of a decedent can be ordered to be paid out of his real estate or by his heirs or devisees only in the manner provided by statute. During three years after his death, his creditors have a kind of statutory lien upon the real estate left by him, and such real estate cannot be so aliened by his heirs or devisees during that time as to defeat the claims of creditors thereon."

In *Matter of Kinn* (136 App. Div. 852, 854) a purchaser from a devisee for a valuable consideration took title to decedent's real estate within three years after the issue of letters testamentary, and proceedings were thereafter brought for the sale of the property to pay decedent's debts. The court said: " Taking the premises under these circumstances, and without making any inquiry so far as appears, to determine whether the personal property was sufficient to pay the debts, the appellant is not an innocent purchaser; he must

take notice that the law gives a *quasi* lien upon the real estate of a deceased person in behalf of creditors during a period of three years, and during that time it cannot be aliened by his heirs or devisees in such a manner as to defeat the claims of creditors thereon."

It is clear, therefore, that nothing that has been done by the heirs or the purchaser from them or subsequent lienors or owners can defeat or impair the creditor's right to have .sold this real estate and have his debts satisfied out of the proceeds of the sale in priority to the mortgagees and the owner for improvements thereon.

The only question that in the instant case could present equitable considerations would be the right of the present owner to be repaid the amount of the incumbrances and liens that were on the property at the time of the decedent's death by the principles of subrogation. As to these the appellant offered before the surrogate and renews his offer in this court that these payments may be reimbursed first out of the proceeds of the sale. As to the liens for moneys advanced for improvements or the value of improvements, the owner or the mortgagees have no legal or equitable right to priority of payment over the appellant. They took the property, advanced the money, and constructed the buildings subject to the lien of the creditors of the deceased.

The decree must, therefore, be reversed, with costs to the appellant, and a decree entered directing the administrator to sell the premises and pay out of the proceeds thereof to personal representatives of Walter I. Scott the sum of $6,444.58, with interest thereon from August 16, 1912, and pay to the petitioner the sum of $3,807.03, with interest thereon from May 20, 1914, and after paying the expenses of administration, pay the surplus if any to the owner or mortgagees as their interest may appear.

CLARKE, P. J., SCOTT, SMITH and SHEARN, JJ., concurred.

Decree reversed, with costs, and a decree directed to be entered in accordance with opinion. Order to be settled on notice.