In the Matter of the Judicial Settlement of the Account of Proceedings of JACOB C. WARSHAUER, as Executor, etc., of MAX BEEBER, Deceased.

JOSEPH J. SCHIFFER, as Committee, etc., of CARRIE B. SCHIFFER, an Incompetent, Appellant; JACOB C. WARSHAUER, as Executor, etc., and FREDDIE B. STIX, Respondents.

First Department, May 17, 1918.

**Executors and administrators — reimbursement of committee of incompetent residuary legatee for· taxes paid to prevent sale of property by another legatee.**

Where a testator bequeathed to his daughter a certain sum out of the proceeds of the sale of.his real estate, his only property, and gave the residue to his other daughter for whom a committee had been appointed upon her becoming incompetent, and said committee, the executor of the estate being without funds, advanced money and paid taxes on the property which were a lien at the time of the decedent's death and to which the payment of the legacy was subject, and also paid the taxes and water rates for the period between the decedent's death and the expiration of the year when the legatee had the right to compel the sale

of the real estate to pay her legacy, said committee, not having merely loaned or advanced the money for the account of the executor that the taxes might be discharged, but having paid it on behalf of the incompetent for the purpose of preventing a sale of the property and this for the sole benefit of the incompetent, is entitled to reimbursement.

PAGE, J., dissented in part, with opinion.

APPEAL by Joseph J. Schiffer, as committee, from so much of a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 8th day of October, 1917, as disallows a claim against the estate amounting to $846.11, filed by the appellant, and as directs the distribution of the estate without providing for the payment thereof.

*Arthur C. Kahn* of counsel [*Walter H. Liebmann* with him on the brief], for the appellant.

*Robert E. Samuels* of counsel [*Goldsmith, Cohen, Cole & Weiss*, attorneys], for the respondents.

DOWLING, J.:

Max Beeber died on November 30, 1913, leaving a last will and testament and a codicil thereto, duly admitted to probate by the Surrogate's Court, New York county, and whereon letters testamentary were issued to Jacob C. Warshauer on May 4, 1914. By the codicil testator bequeathed to his daughter Freddie B. Stix the sum of $2,000 out of the proceeds of the sale of his real estate. The residue of his estate was to be paid one-third to his daughter Carrie B. Schiffer and the other two-thirds to his executors in trust to invest and pay the income thereof to her for life and at her death to divide the principal between her issue. On December 7, 1915, the attorneys for Freddie B. Stix wrote to the attorneys for the executor asking that arrangements be made for the payment of her legacy and also requesting information as to whether the taxes on the real property of testator had been paid to date or not. The decedent had left no property save certain real estate of the appraised value of $6,000. The funeral expenses, amounting to $401.10, had been paid by Mrs. Stix, the estate being without funds, Mrs. Schiffer had become incompetent and a committee of her person and property had been appointed being the claimant herein,

Joseph J. Schiffer. As the result of correspondence between the attorneys for the executor, for Mrs. Stix and for Mrs. Schiffer's committee respectively, which it is unnecessary to detail, an agreement was reached upon the basis that if the arrears of taxes upon the real estate were paid, Mrs. Stix would not insist upon an immediate sale of the property, but would allow the sale to remain in abeyance for one year, provided the taxes then due were paid. It clearly appears that the attorneys for Mrs. Schiffer's committee believed it would be unwise to allow a sale to be had at the time in question (about December, 1915), and as she was the beneficiary of the whole residuary estate, to the extent of one-third personally and two-thirds in trust for her, the attorneys for the committee suggested that the committee should pay the taxes due upon the real estate, both to save interest and to prevent a sale. The executor had no funds with which to pay any taxes and if the taxes had not been paid Mrs. Stix would have at once taken steps, as the correspondence shows, to compel the immediate sale of the real estate to satisfy the payment of her legacy. It is quite clear that it was not believed by the committee for Mrs. Schiffer that a sale at that time would be advantageous for the interests he represented and that he thought as well that the property would increase in value. The correspondence in its entirety bears out the contention thoroughly that what the committee agreed to do was to pay these back taxes on the Riverdale avenue lots in consideration of Mrs. Stix waiting a year further for the payment of her legacy. At this time her only interest in the estate was her legacy of $2,000 together with the amount advanced by her for funeral expenses, and all the rest was to go directly or indirectly to Mrs. Schiffer, so that as far as the real estate was concerned the interest of Mrs. Schiffer was by far the more important of the two. Joseph J. Schiffer as committee of Carrie B. Schiffer did in fact advance the money to pay the arrears of taxes (as well as water rates) upon these premises. The claim as presented to the executor amounts to $846.11 whereof the sum of $311.54 is for arrears of taxes for the years 1911, 1912 and 1913, being the taxes due upon this property down to the time of decedent's death. The sum of $91.58 is for arrears of taxes and water rates for the year

First Department, May, 1918.          [Vol. 183.

1914. Mrs. Stix was within her rights in insisting upon a sale of the real estate to pay her legacy of $2,000. She, however, could not compel the payment of this legacy until a year after the granting of letters testamentary to the executor of Beeber's estate. (See Code Civ. Proc. § 1819.) As the sum of $2,000, the amount of her legacy, was to be paid to her out of the proceeds of the sale of the real estate, it follows that if a sale had been had at the time that she first could have demanded payment of her legacy, she would have been entitled to receive the sum of $2,000 out of the proceeds of sale, subject to the taxes which were a lien upon the property at the time of her father's death and also subject to the taxes which had accumulated upon the property intervening his death and down to the time that she was in a position to demand payment of her legacy. As to these taxes there was no consideration for the committee's agreement to pay them, for the legatee's rights were subject to the amount thereof. But Mrs. Stix had the absolute right to enforce payment of her legacy by means of a sale of the real estate when the correspondence in question began, and as the committee of Mrs. Schiffer's estate deemed it for her interest that no sale should be had at that time and as Mrs. Stix insisted that the taxes must be paid or she would force a sale, there was good consideration for Schiffer as committee agreeing to pay the amount of the taxes thereafter accruing until a sale of the property was had. This consideration was Mrs. Stix's promise to forego for one year her right to compel a sale of the realty to pay the amount of her legacy. The facts of this case are peculiar and unusual, but I think the writings of the parties sufficiently demonstrate that the committee did not simply loan or advance this money for the account of the executor (who was without funds) that the taxes might be discharged, but paid the money on behalf of the incompetent, for the purpose of preventing a sale of the property and this for the sole benefit of the incompetent, the residuary legatee. Under the circumstances shown here I believe that the committee is entitled to reimbursement from the estate for the taxes for 1911, 1912 and 1913, which were a lien upon the property at the time of decedent's death and which aggregated $311.54, and subject to which Mrs. Stix's legacy was payable.

He is also entitled to be reimbursed in the sum of $91.58, being the taxes and water rates advanced by him for the year 1914, intermediate the decedent's death and the expiration of the year when the legatee had the right to compel the sale of the real estate to pay her legacy. . The theory on which I think he is entitled to reimbursement is that there was no consideration for his volunteering to pay the same, the right of the legatee being subject to the amount of these charges. As to the remaining amount paid by him, there was a good consideration in the agreement of the legatee to delay the enforcement of her rights, and in her justifiable refusal to consent that further taxes should accumulate to her detriment. In so deciding, I am not unmindful of the opinion of Judge GRAY in *Matter of Selleck* (111 N. Y. 284), wherein he said the payment of taxes not a lien on property of testator at the time of his death is without reason or authority in the statutes; but this allowance of the taxes paid for the years in question is based upon the peculiar facts of this case. The decree appealed from should, therefore, be modified by directing that the executor pay as part of the debts of the estate and prior to the payment of Mrs. Stix's legacy, the sums of $311.54 and $91.58, with interest from the date of the respective payments, and as so modified the decree is affirmed, with costs to the appellant.

CLARKE, P. J., LAUGHLIN and SHEARN, JJ., concurred; PAGE, J., dissented in part.

PAGE, J. (dissenting in part):

In the 3d paragraph of the codicil to the will of the testator is a clear and emphatic direction to his executors to sell the real estate, and thereby an equitable conversion is accomplished. (*Matter of Caldwell*, 188 N. Y. 115, 121; *Phœnix* v. *Trustees of Columbia College*, 87 App. Div. 438; affd., on opinion below, 179 N. Y. 592.) The property, therefore, represents a fund in the possession of the executor who, of course, should pay all charges incidental thereto. The daughter Carrie B. Schiffer had no right to the property, nor any interest in the real estate as such. It was given to the executor with a mandatory power of sale, and any rights that she might have are subordinate thereto. Her interest is in the fund realized upon the sale.

First Department, May, 1918. .                    [Vol. 183.

The executor could not sell and convey the real property without paying the taxes which were a lien thereon, not only those that had accrued in the lifetime of the testator but those that became a lien after his death and prior to the sale. It is well settled that a person interested in the administration of an estate who pays claims against the estate is entitled to subrogation of the creditors' rights to recover the amount paid. (*Matter of O'Brien*, 39 App. Div. 321, and cases cited.) The right to subrogation is a familiar principle of equity jurisprudence and the Surrogate's Court has the power where the debt or claim is established to direct the payment thereof to the equitable assignee. This would seem to have been the law prior to the amendment of the Code of Civil Procedure. (*Ball* v. *Miller*, 17 How. Pr. 300; *Matter of O'Brien, supra.*) The court clearly has the power under section 2510 of the Code of Civil Procedure. (*Matter of Doyle*, 180 App. Div. 398, 402.)

In my opinion the committee of Carrie B. Schiffer is entitled to be repaid all the moneys he advanced for the payment of taxes.

Decree modified as stated in opinion, and as modified affirmed, with costs to appellant. Order to be settled on notice.